# CHARLESTON.

STATE *ex rel.* J. M. HENSON *v.* COUNTY COURT OF PUTNAM COUNTY.

Submitted February 27, 1923.    Decided March 13, 1923.

1.  COUNTIES—*Filing of Statement by County Officers as to Necessary Amount Expended for Deputies, Assistants, etc., in Proper Time Held Substantial Compliance With Statute.*

Under section 40, chapter 137, Code, county clerks and other officers therein specified; are required on or before

December first of each year to file with the county court a detailed statement of the probable amount necessary to be expended for deputies, assistants and other employees of their respective offices, for the following year but a filing of such statement in proper time with the county clerk is a substantial compliance with the statute.    (p. 322).

2.  SAME—County Court Required to Meet Not Later Than Fifteen Days After Filing of Statement of Public Expense by County Officers, to Determine Aggregate Sum and Enter Finding of Record.

The county court is required to meet not later than fifteen days after the filing of the statement, to take up and consider it, to determine the aggregate sum to be so expended and to enter upon its record a finding of its action.    (p. 322).

3.  SAME—County Court Cannot Reduce Lump Sum Statement Filed by Clerk of Fund Necessary for Deputies and Employees Where Determined More Than Fifteen Days From Filing Thereof.

A statement of a county clerk, not detailed, but merely showing the aggregate sum needed for such purposes is not such a statement as is contemplated by the statute.    But where he has in proper time filed such lump sum statement and the county court thereafter meets, takes up and considers it, determines the aggregate sum to be expended by him, and enters upon its record a finding of its action, it can not after the adjournment of the term at which such action is taken and more than fifteen days after the statement is filed reconsider its findings and reduce the amount so determined.

4.  SAME—County Court After Clerk Filing Statement Showing Whom Employed as Deputies and Assistants, May Order Drafts to be Issued for Payment of Salaries.

Under the second paragraph of section 40, chapter 137, Code, the county clerk is required to file a second statement showing whom he has employed as deputies and assistants, and the time and terms for which they are employed.  Thereupon, the court, though it is not required to do so, may enter an order authorizing the president and clerk of the county court thereafter to issue drafts to the officer and his deputies and assistants for their monthly salaries as they accrue, provided such officer shall have complied with the requirement respecting his accounting for the fees collected by him. (p. 323).

5.  MANDAMUS—*Will Lie to Compel County Court to Issue Drafts*
    *for Payment of Deputies and Assistants of Clerk After Com-*
    *pliance With Statute.*

    Where a county clerk has filed his statement showing the
    amount necessary to pay the salaries of his deputies and as-
    sistants for the following year and the county court has en-
    tered its findings thereon of record and fixed a stipulated
    sum to be expended for that purpose, and the county clerk
    has contracted with his deputies and assistants and has filed
    his statement showing the names of his deputies and as-
    sistants, the time and terms of their employment, and sal-
    aries have accrued to such deputies for their services which
    the county court refuses to pay, mandamus will lie to compel
    the county court to issue drafts for the payment thereof.
    (p. 323).

Petition by the State, on the relation of J. M. Henson,
against the County Court of Putnam County for an alterna-
tive writ of mandamus to compel defendant to rescind its
order reducing the appropriation formerly allowed by it for
deputies and other assistants of the clerk's office, etc.

*Writ awarded.*

*C. E. Copen,* for relator.
*John T. Simms,* and *John D. Thomas,* for respondent.

MEREDITH, JUDGE:

J. M. Henson, clerk of the county court of Putnam County,
applied to this court by petition, duly verified, for an alter-
native writ of mandamus to compel the county court of that
county to rescind its order of December 18, 1922, reducing the
appropriation formerly allowed by it for deputies and other
assistants of the clerk's office for the year 1923, and to com-
mand the president of said court to sign in his official capacity
salary orders for his deputy clerks for the month of January,
1923, and subsequent months during the year, in accordance
with the original appropriation.   The alternative writ having
been issued, defendants appeared and filed their answer and
return thereto.   Petitioner demurs to said return, moves to
strike out certain paragraphs, and answers by the way of
special reply.

The writ shows: that petitioner is the duly elected and qual-

ified clerk of the county court of Putnam County that prior to December 1, 1922, he made up and filed, as prescribed by law (Barnes' Code, 1923, ch. 137, §40), an estimate and statement of the amount necessary for the hire of deputies and assistants in his office for the year 1923, which amount he fixed at $4500; that on December 2, 1922, within the 15 day period stipulated by the statute the county court met in special session and fixed the appropriation for the purposes named for the year 1923 at $4000, and entered an order of record appropriating and setting aside that amount, the order entered being as follows:

"At a special session of the County Court of Putnam County, held in and for said County, pursuant to law, at the Court House thereof, on Saturday, the 2nd day, of December, 1922.

The court this day took up the detailed statement heretofore filed by J. M. Henson, Clerk of the County Court of Putnam County, asking that the amount of $4500 be set aside as the amount necessary to be expended for deputies and other assistants in the office of said clerk for the year 1923. And it appearing to the court that said amount is probably in excess of the amount necessary to be expended for such purpose, it is ordered that the amount of $4000 be set aside as the amount necessary to be expended for such deputies and other assistants for said office for the year 1923;"

that after so making the appropriation and after the expiration of the fifteen day period, at a regular session of the county court, held on December 18, 1922, said court by an order of record, attempted to rescind its former action of December 2, 1922, and reduce the amount of the appropriation from $4000 to $2000. The result of this attempted rescission, as alleged, was that when petitioner, on January 31, 1923, filed his statement in his office showing the names of his clerks and deputies and the amounts of the salaries due them for that month, and presented orders, directing payment thereof by the

sheriff, to the president of the county court, L. W. Cain, for his signature, the latter officer refused to sign them. This statement and the orders called for the payment of $125 to W. Z. Cash and a like amount to Lee Barrows, salaries as deputies to the county clerk for January. These amounts, it will be seen, were in accordance with the original $4000 appropriation, which the president of the court refused and still refuses to recognize as binding upon that body. Petitioner avers the reasonableness of a $4000 appropriation, stating that the business of his office necessitated the employment at all times of two and at times three deputy clerks, and the petition prays and the alternative writ commands that the county court and L. W. Cain, is president, rescind the order of December 18, 1922, reducing their prior appropriation of $4000 to $2200, and that L. W. Cain as president of said court sign said salary orders for $125 each to Lee Barrows and W. Z. Cash for the month of January, 1923, "and to sign subsequent orders to be issued monthly for their services as such deputy county clerks when such services shall be performed and the county clerk shall have filed verified monthly statements as required by law to pay for deputy hire for 1923, not to exceed the sum of $4000 as fixed and allowed in said order of December 2, 1922, or show cause if any can be shown, why said December 18, 1922, order should not be rescinded and why said salary order of such deputies should not be signed by L. W. Cain, President of said county court."

Certified copies of the orders of the county court of December 2, 1922, and December 18, 1922, are filed as exhibits with the petition.

Respondents, in their return, deny that petitioner filed his estimate within fifteen days, as prescribed by law; they, however, aver that petitioner filed on November 13, 1922, a so-called estimate or statement with the then members of the county court, respondents' predecessors in office; that the county court as then constituted declined to act upon the statement and that no action was taken until December 2, 1922, when petitioner filed with respondents, sitting in special session, a written request for an aggregate allowance for the

year 1923; that respondent L. W. Cain objected to the statement filed upon the ground of its insufficiency and requested the filing of a more detailed statement which petitioner declined to make; that respondent L. W. Cain, thereafter, refused to consider the request; but that owing to the turmoil and confusion which prevailed about the court during the period, and because of the domineering attitude of the petitioner, and especially because of the fact that they were under the impression that the appropriation requested included the statutory salary of the clerk, amounting to $1800, two of the respondents, W. T. Oxley and F. H. Honaker, members of the county court, finally acquiesced in petitioner's demand to the extent of allowing and authorizing an appropriation for the year 1923 of $4000. It is then alleged that shortly after the adjournment of the special term, respondents, Oxley and Honaker, discovered their mistake and therefore the action of the county court at its regular session on December 18, 1922, whereby they reduced the appropriation from $4000 to $2200 by order entered of record, followed. Respondents insistently deny the filing of a detailed statement such as is required by section 40, chapter 137 of the Code, prior to December 1, 1922; deny the necessity of employing two or three deputies; and further say that before the president of the county court is authorized to sign orders for salaries, an order of record must be entered by the court directing the issuance of such orders in pursuance of the statement showing the names of the recipients and the amounts of the salaries due them, which statements respondents deny have been filed by the petitioner for the month of January, 1923, though they admit the filing of two drafts for $125 each, purporting to be in payment of salaries due Lee Barrows and W. Z. Cash, also a draft for his daughter, Ruth Henson, as assistant, which drafts respondent Cain, for reasons aforesaid, refused to sign. With a review of the condition and character of the county generally, and of the reasonable necessity of the county clerk's office the return concludes with a prayer that respondents be dismissed.

One exhibit is filed with the return, the written request of J. M. Henson, referred to in the return. It is a copy of a

letter, certified to as being filed with the clerk of the county court on November 18, 1922, and is as follows:

"November 10th, 1922.

HONORABLE COUNTY COURT OF PUTNAM COUNTY, WEST VIRGINIA.

GENTLEMEN:

In accordance with chapter 57, section 8, Acts of West Virginia Legislature, 1919, I, J. M. Henson, Clerk of the County Court of Putnam County, West Virginia, respectfully request your Honorable Body to set aside the amount of $4500.00, which is the probable amount necessary to be expended for deputies, assistants and other employees for the County Clerk's office of Putnam County, West Virginia, for the calendar year beginning the 1st day of January, 1923, and ending the 31st day of December, 1923.

Respectfully submitted,

J. M. HENSON, Clerk,
County Court, Putnam County,
West Virginia."

By way of special reply, petitioner points out several matters, perhaps already observed, which are pertinent:

1. Contrary to the allegations of the return, the certified copy of petitioner's statement to the county court shows that it was filed in his office on November 18, 1922, within the time prescribed by law; that it never was presented to the outgoing members of the county court, but was presented for the first time to respondents on December 2, 1922.

2. Petitioner avers that the order of December 2, 1922, was endorsed by respondent, L. W. Cain, president of the county court.

3. That at the meeting of December 2, 1922, when petitioner's statement and estimate was being considered, the county court was advised of the number of deputies customarily hired, and of the amounts of their salaries, and that respondents made no objection to the form of the statement but to the aggregate amount only; that he believes there was no misunderstanding to the effect that the salary of the county clerk was included in the estimate and that no attempt was made to intimidate the county court into making an appropriation.

4. That the orders and minutes of the meeting of December 2, 1922, were read in open court, inspected, and signed by the president, L. W. Cain.

5. That all statements required by law have been properly filed, and that an appropriation of $4000 is reasonable and necessary.

Other matters are averred in the special reply, answering allegations in the return, concerning conditions existing in the county court at and about the time of this controversy, none of which we deem material to the issues involved.

Two exhibits are filed. One purports to be the monthly statement of J. M. Henson, county clerk, for the month of January, 1923, bearing his signature and acknowledgment, dated February 8, 1923. The other is a certified copy of petitioner's estimate quoted heretofore.

Such in substance is the record, but more briefly stated, respondent's refusal to sign the orders is based here on the following grounds:

1. That the county clerk did not comply with the statute, in the following particulars: (a) he did not file a detailed statement; (b) he did not file it with the county court, but merely lodged it in his, the county clerk's office.

2. That the county court having by mistake included in its appropriation a sum sufficient to pay the county clerk's statutory salary and the salaries of his deputies and assistants, it has the right thereafter to correct its order and reduce the appropriation.

The first paragraph of section 40, chapter 137, Barnes' Code, 1923, requires the clerk of the county court and other officers named therein, on or before December 1st of each year, to file with the county court, or other tribunal in lieu thereof, a detailed statement of the probable amount necessary to be expended for deputies, assistants, and other employees of their respective offices in the following year. Such county court or tribunal is then required, not later than fifteen days after the filing of the statement, to take up and consider it and to determine and fix an aggregate sum to be expended for the period covered by the statement for such compensation for all such deputies, assistants and other employees of

said respective offices, and enter upon the record "a finding of its action." The amount so fixed is to be reasonable, measured by the work to be done. The amount to be expended for the office of circuit clerk is to be fixed by the concurrent action of the county court or other tribunal in lieu thereof and the judge or judges of the circuit, criminal, common pleas or intermediate courts. In case any taxpayer feels aggrieved at the allowance made the sheriff, he or the sheriff himself, may appeal to the circuit court for the purpose of determining the equity of the sheriff's maximum allowance.

While the statement is not in detail as contemplated by the statute, the order of the county court shows that it treated it as a "detailed statement," and acted upon it. Before passing its order, the court without doubt made oral inquiries, explanations were made, and the court became satisfied. But, however that may be, the court passed the order and entered a "finding of its action" "upon its court record" as required by the statute. By its order of December 2nd it treated it as being a "detailed statement." In its subsequent order of December 18th it acted without requiring any further detailed statement. If a detailed statement were necessary to the validity of the first order, it was likewise necessary to the validity of the second. Both are based on the same statement. We do not think the court after passing the order making the appropriation of $4000, and thereby treating the statement as sufficiently detailed, had any right, after the adjournment of the term, to rescind its order at a subsequent term on the ground that the statement was not sufficiently detailed. The detailed statement must be filed on or before December 1st of each year. The county court is required not later than fifteen days from the filing thereof to take up and consider the same and to determine and fix the aggregate amount to be expended. There is nothing in the statute from which it can be inferred that the county court can act after fifteen days. Its action seems to be limited to that period. Whether it could act after that period, should it fail to act within it, or whether it could by proper proceedings be compelled thereafter to act in such case, we need not

and do not decide; but having acted, we hold that it can not after the adjournment of the term at which it passed the appropriation, and at a time beyond the fifteen day period fixed by the statute, meet again and rescind its former order. This view is strongly supported by the object of the statute. This particular provision is an amendment to the original statute abolishing the fee system and placing county officers on a salary basis, enacted in 1908, chapter 15, Acts 1908; the act was amended by chapter 83, Acts 1915. By that amendment, for the first time, clerks of the various courts were required to file the detailed statement mentioned, but it was not to take effect as to them until January 1, 1921. By a further amendment, chapter 57, Acts 1919, sheriffs were included with court clerks, and likewise required to file statements. These two amendments provide for what has been popularly termed a sort of "budget" or statement showing the financial requirements of the officers as respects their deputies and assistant employees. The Legislature knew that in most instances the officers named in the statute could not perform all the work and that they could not pay the necessary assistants out of their limited salaries. To pay these the county court was authorized to set aside a lump sum for the following year; it also knew the continuous temptations placed before county courts to increase the amounts, and so in the second paragraph of section 40, of the act as it now stands it provided that the amount so set aside should not be exceeded for that year. It required the county court, when it determines the amount of the "budget" to enter of record its findings, for the very purpose, as we believe, to remove the matter beyond further controversy and temptation, so that thereafter there would be no further attempt to increase or reduce the amount. It is argued by counsel for the county court that it can at any time before January 1st of the following year, that is, the year for which the appropriation is made, reduce or increase it, on the theory that the deputies or assistants have not entered upon the performance of their duties. We do not think so. The very purpose of requiring the statement to be filed on or before December 1st and the appropriation to be fixed not later than fifteen days from the date of its filing is to enable the officer to make the neces-

sary arrangements or contracts of employment with his deputies. This takes time. It often involves the most troublous questions the officer has to meet. If he contracts with his deputies on a basis fixed by the county court, and the court is at liberty thereafter to change its appropriation, all his contracts of employment may be abrogated, his plans upset, and he must do all his work over again.

That the members of the county court were newly elected, and that they were not familiar with their duties, may be conceded, but that they were surprised, or that they made a mistake as respects the inclusion of the county clerk's salary in the appropriation made, we can not believe. There is only the sum of $1800 involved, but that item may determine whether the work in the county clerk's office is to be well done or poorly done. The work ought to be kept right up to date. The people are entitled to good service; to have that kind of service they must pay for it, and are usually willing to do so. They must not expect good service to be rendered by poorly paid assistants or an insufficient number of assistants.

It is also urged in argument that petitioner's statement was never legally filed; that it was not filed with the county court until December 2nd, while the statute requires it to be filed on or before December 1st. But it appears that the court was not in session for fifteen days preceding December 1st, so it could not have been filed with it in strict compliance with the statute. It was filed in the county clerk's office November 18th. We think that was a sufficient compliance with the statute under the circumstances. We are not unmindful of the fact that there are but four regular terms of county courts each year; that the times these are held are fixed by each particular court; that special terms are called as needed; but that in many counties the county courts seldom meet in special session. Under a construction of the statute as argued by respondents, if the county court should not be in session prior to December 1st, an officer could not comply with the statute at all, unless he should file his statement at a preceding regular term or watch for some special term that perchance might be called. If he were elected at a regular

election in November and should assume his office January 1st, he could not file his statement with the court until it met, and if it did not meet in November he could not file it before December 1st, as the statute requires. We think that under a fair interpretation of the statute it is complied with by filing the statement with the county clerk, he being the recording officer of the court.

One other objection raised is that the clerk has not shown that he filed the second statement required by the second paragraph of section 40, showing that he has employed his deputies and assistants, who they are and the time and terms of their employment, and that the county court has entered an order authorizing the president and clerk of the court to sign the monthly salary orders payable to the deputies and assistants. We think it sufficiently appears that he has reported the names of his deputies and assistants and the time for which they are employed and the terms of their employment. It does appear, however, that the county court has not entered any order authorizing the president and clerk to sign orders or drafts for the payment of the clerk's or his deputies' salaries monthly; nor does the statute require the court to enter such a blanket order. That provision is for the convenience of the court. If it is not adopted, then the court must meet monthly or at such other times as may be required to authorize the issuance of the orders. Moneys cannot be disbursed without the order of the court, but in this particular instance and for this particular purpose the Legislature has permitted the court in advance to authorize, by order entered of record, the president and clerk, to sign salary drafts for payment of the monthly salaries of the officer and his deputies. This applies to other officers besides the clerk of the county court.

One other point raised by respondents is that to require them to pay these salaries deprives them of all discretion in fixing the amount of the salaries. We do not so regard it. That was determined by the county court when the salary budget was fixed.

As we read the record, the clerk has substantially complied with the statute. The court acted upon his statement, passed

the order fixing the salary budget for his office for 1923. His deputies thereafter entered upon their work, performed their duties for the month of January, 1923, and, we assume, earned their salary. The clerk settled with the sheriff for the fees he received in his office during that month and exhibits the receipt therefor signed by the sheriff. We see no reason to withhold the writ requiring the court to issue the orders or drafts for the payment of the salaries for the month of January; but as to the salaries which may accrue for the succeeding months, it would be improper for us to make any such requirement, since the county court has not entered any blanket order authorizing the president and county clerk to sign drafts therefor. Under such circumstances, we can so amend the alternative writ as to make it conform to the mandate of the peremptory writ which we will award. *State ex rel. Mt. Hope Coal Co.* v. *White Oak Ry. Co.*, 65 W. Va. 17, 664 S. E. 630. Should the court refuse to make payments for the succeeding months as the salaries accrue, an appropriate remedy is at hand.

For the foregoing reasons, a peremptory writ will be awarded requiring the county court to issue orders for the payment of the salaries to Lee Barrows and W. Z. Cash, for $125 each, for the month of January, 1923, and petitioner will be allowed his costs.

*Writ awarded.*