LESTER E. EASTWOOD

*Plaintiff*

vs.

WYOMING HIGHWAY DEPARTMENT

*Defendant*

(No. 2742; September 25, 1956; 301 Pac. (2d) 818)

For the plaintiff, the cause was submitted upon the brief of Greenwood, Ferrall & Bloomfield of Cheyenne, Wyoming, and oral argument by Mr. Bard Ferrall.

For the defendant, the cause was submitted upon the brief of George F. Guy, Attorney General, Robert H. McPhillamey, Deputy Attorney General, and Robert L. Duncan, Special Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument by Mr. Duncan.

Justice Parker delivered the opinion of the court.

## OPINION

Plaintiff, Lester E. Eastwood, filed an application in the district court, asking that a revocation of his driver's license by the Motor Vehicle Division of the State Highway Department under § 60-1615(3)(c), W.C.S.1945 [Cum. Pocket Supp. 1955], be set aside on the ground that such revocation contravened §§ 6, 7, 8, and 34, Art. 1, Wyoming Constitution; and the case has been sent to this court on the following reserved constitutional question:

"Is Subsection (3) (c) of Chapter 171 of the Session Laws of Wyoming, 1953, unconstitutional and void as in contravention of one or more of the provisions of the Constitution of the State of Wyoming and particularly in contravention of one or more of the provisions designated as Sections 6, 7, 8 and 34 of Article 1?"

The facts leading up to the action are not stated in the pleadings but appear from the statements of counsel for the plaintiff in the brief and argument. On September 4, 1955, the car driven by plaintiff collided at an intersection with the car driven by George W. Wade; and as a result of the accident, Mr. Wade died on September 5, 1955. On October 31, 1955, the Motor Vehicle Division delivered to plaintiff a "Notice of

Suspension or Revocation of Driver's License" which stated, interalia:

"By authority of Chapter 162, Session Laws of Wyoming, 1947, as amended by Chapter 171, Session Laws of Wyoming 1953.

"You are hereby notified that your privileges to operate a motor vehicle in the State of Wyoming is revoked for the period from September 4, 1955 to September 4, 1956, for the reason Departmental Investigation under Session Laws, 1953, Chapter 171, Section 1, (3) (c).

"(3) The Motor Vehicle Division may conduct an investigation to determine whether the license shall be suspended, cancelled or revoked upon a showing by its records or other sufficient evidence that the licensee;

"(c) Has been involved as a driver in any accident resulting in the death or personal injury of another or serious property damage."

In accordance with defendant's order, plaintiff surrendered his license on November 5, 1955, and thereafter brought the present action.

The period of "revocation" of license expired September 4, 1956, and the case is therefore moot. Even so, we consider the principles involved to be of sufficient public interest and importance to merit full discussion.

Plaintiff's contention is that the statute under which defendant purported to act "provides for the revocation or suspension of a license upon grounds other than the wrongdoing, fault, negligence, crime, misdemeanor, incompetence, mental or physical infirmities or disabilities of a driver," or stated in another way, that in this situation there are no standards for the licensee, the violation of which would be cause for revocation of license.

The controversy in this case arises from a difference in viewpoint regarding the meaning of § 60-1615(3)(c), W.C.S.1945 [Cum. Pocket Supp. 1955], the plaintiff insisting that the revocation was upon grounds *other than wrongdoings*, and, in fact, that there are *no* stated grounds; while defendant urges that (a) the legislature can and must delegate certain discretionary duties to the Wyoming Highway Department and (b) as far as plaintiff was concerned, the statute was not administered arbitrarily or capriciously.

In order to approach this matter logically, it is desirable to discuss the history of the statute in controversy; and in so doing, a designation of portions thereof by short titles will eliminate emphasis on verbiage. The chapter containing the controversial section (hereafter called subsection (3)(c)) was first passed as the Chauffers' and Drivers' License Act (hereafter called the Act) by ch. 162, S. L. of Wyoming, 1947, was amended by ch. 150, S. L. of Wyoming, 1949, and again by ch. 171, S. L. of Wyoming, 1953. During its existence, subsection (3)(c) of the Act has remained unchanged except for the unimportant substitution of the words "Motor Vehicle Division" in lieu of "Department." Subsection (4) of the Act, immediately following the subsection in controversy, is actually most important in the determination of this case. For ease of identification, it will be designated herein merely as subsection (4).

We quote herewith that portion of subsection (4) of the 1947 Act germane to the decision in this case — and in order to focus attention on deficiencies in the statute have supplied emphasis to certain words therein.

"Upon the conclusion of such investigation, the person or persons holding such investigation shall prepare

findings based upon the evidence received and considered. If the *findings* are to the effect that the person referred to therein *is incompetent or is unfit to operate a motor vehicle upon any grounds upon which license might be refused, as stated in this Act,* the Department, upon a review of such findings, shall have authority to forthwith revoke the license of such person, or if the *findings* are to the effect that the person therein referred to *has by reason of negligence or reckless driving endangered life, limb, or property, or has thereby caused loss of life or injury to person or property,* the Department, upon a review of such findings, shall have power to suspend the license of such person not exceeding six (6) months, or may revoke such license * * *. Any person * * * whose license has been * * *revoked shall have the right to file an application within thirty (30) days thereafter for a hearing * * * before the district court * * *." (Emphasis supplied.)

As the italicized portions indicate, subsection (4) of the 1947 Act provided for the revocation of a driver's license by the State Highway Department if (a) the licensee "is incompetent or is unfit to operate a motor vehicle upon any grounds upon which license might be refused, as stated in this Act" or (b) the licensee "has by reason of negligence or reckless driving endangered life, limb, or property, or has thereby caused loss of life or injury to person or property." The provision for revocation because a licensee was "incompetent or * * * unfit" was meaningless, inasmuch as that statute contained no section providing grounds upon which a license might be *refused.* (As a matter of interest, many operators' and chauffers' license laws, especially those based on uniform or model acts, in effect provide such grounds by stating what persons shall not be licensed.) Thus, the acts of "negligence or reckless driving" of a licensee were the only grounds upon which a license could be revoked under the original subsection (3)(c) [and subsection (4)].

It is significant to note that when the Act of 1947 was amended and re-enacted in 1949, subsection (4), as amended, failed to include any reference to findings relating to negligence or reckless driving. The portion of the amendment relevant to this discussion read:

"Upon the conclusion of such investigation, the person or persons holding such investigation shall prepare findings based upon the evidence received and considered. The Department upon review of such findings may dismiss the proceeding or it may suspend or revoke the license of such person for a period not to exceed twelve (12) months * * *. Any person * * * whose license has been * * * revoked shall have the right to file an application within thirty (30) days thereafter for a hearing * * * before the district court * * *."

This portion of subsection (4) remained the same under the 1953 amendment with the exception of the unimportant substitution of the words "Motor Vehicle Division" for "Department."

Inasmuch as subsection (3) (c) remained unchanged and its provisions for revocation of license were, both in the original law and in the amendments, dependent upon the provisions of subsection (4), an analysis requires that we consider the provisions of subsection (4), first, under the 1947 Act and, second, as it now stands. Under the 1947 Act, subsection (4) provided for the revocation of a license if (a) "the person * * * is incompetent or is unfit to operate a motor vehicle upon any grounds upon which license might be refused, as stated in this Act, [wholly meaningless, as previously indicated]" or (b) "the person * * * has by reason of negligence or reckless driving endangered life, limb, or property, or has thereby caused loss of life or injury to person or property."

Unfortunately, subsection (4) under the 1949 amendment of the Act, as above noted, omitted all reference to "negligence or reckless driving," and, thus, after the amendment, contained no basis for revocation except the meaningless reference to incompetency or unfitness.

The motor vehicle codes of other states have often contained provisions by which the administrators might revoke drivers' licenses more or less summarily. Such laws have frequently been challenged on the ground of unconstitutionality, and the resulting cases indicate that there is no unanimity of viewpoint in the several jurisdictions. In some instances there has even been marked disagreement within the courts, necessitating issuance of majority and minority opinions. See statements, discussions and cases cited in 5 Am.Jur., Automobiles § 157; 60 C.J.S., Motor Vehicles § 160; 1 Blashfield, Cyclopedia of Automobile Law and Practice (1948), § 580; and 1-2 Huddy, Cyclopedia of Automobile Law (1932), § 248; and Annotations at 71 A.L.R. 616, 108 A.L.R. 1162, 125 A.L.R. 1459, and 10 A.L.R.2d 833.

In general, it may be said that those courts who have disapproved statutes which provided for summary revocation of a driver's license have tended to hold that (a) fundamentally, the license to drive is a *right*, denial of which without due process is a violation of both federal and state constitutions, and (b) procedurally, a prerequisite to the revocation of a driver's license is a full and complete hearing indicating cause therefor, and a denial of such a hearing is a violation of constitutional rights.

On the other hand, the courts who have approved statutes which provided for the summary revocation of a driver's license have in general held that (a) fundamentally, a driver's license is a *privilege* (not a right), which, for the good of the public, is subject to summary denial or revocation; and such summary revocation is *not* contrary to the constitutional provisions relating to due process, (b) procedurally, no hearing is essential to denial or revocation — perhaps not

even desirable, because it would tend to interfere with the efficiency of the administration, and (c) additionally and by way of justification, the automobile is a dangerous instrumentality, the improper use of which creates a likelihood of serious menace to public safety and authorizes the most stringent use of the government's police power. In effectuating such views, the courts who favor summary revocation of licenses have gone to great length to supply legislative intent by interpretation or interpolation — on occasion translating the word "involved" as impliedly carrying with it the meaning of wrongdoing, even to the point of gross negligence.

If the Wyoming statute in issue in the present case were identical with any one of the various statutes considered by the courts in the opinions we have examined, then it might be desirable that we analyze each case dealing with such a similar statute and identify this court with the view expressed in such case.

The Wyoming statute is not identical with any other statute which has been considered. We have read with care the motor vehicle codes on which each of the various cases cited in the encyclopedias, texts, and annotations was based and have found no statute containing the same provision as that in Wyoming. None has gone so far as to omit therefrom *both* (a) the grounds for refusal of license and (b) the "negligence or reckless driving" clause in the portion of the statute dealing with summary revocation. It would therefore not be helpful to discuss the various cases to which reference is made in the above-cited encyclopedias, texts, and annotations.

Plaintiff herein has relied on State v. Kouni, 58 Idaho 493, 76 P.2d 917, 918, as authority for the claimed unconstitutionality of the statute in controversy,

under the due process provision of § 6, Art. 1, Constitution of Wyoming. In that case, Kouni was convicted of driving during the time his operator's license was suspended under the provisions of the Idaho law (Session Laws 1935, c. 88, § 30 (a)) which stated:

" 'The department is hereby authorized to suspend the license of an operator or chauffeur without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee: *** .
" '2. Has been involved as a driver in any accident resulting in the death or personal injury of another or serious property damage.' "

Defendant therein questioned the validity of the commissioner's order of suspension on the ground of unconstitutionality; and the court held for defendant, even though a following subsection of the Idaho statute provided:

" * * * Upon such hearing, the department shall either rescind its order of suspension or, *good cause* appearing therefor, may extend the suspension of such license or revoke such license." (Emphasis supplied.) Session Laws 1935, c. 88, § 30 (b).

In Wyoming, there has been no decision on a case identical to the instant situation. Perhaps the case which dealt with facts most nearly parallel (although it was decided on other than a constiutional point) was that of Tavegia v. Bromley, 67 Wyo. 93, 214 P.2d 975. The court discussed the Motor Vehicle Safety-Responsibility Act, Laws 1947, c. 160, and the provision therein for the revocation of the license of an operator involved in a serious accident, if the licensee had not theretofore deposited security sufficient to satisfy judgment recoverable against him because of the accident. The superintendent had given Tavegia notice of revocation of license, even though the other participant in the collision had specifically stated that he did not

want any damage from plaintiff and had agreed to sign a release. The court in discussing this matter said (p. 982) :

"In brief the notice * * * sent to plaintiff simply informed the latter that the Superintendent acted merely upon his *records,* that on a named date plaintiff was 'involved in a motor vehicle accident' and that no proof of financial responsibility has been filed with that official. The statute requires more than this, and properly so, when the Superintendent is undertaking to establish a legal right to abridge another's privileges which have been granted the latter by law. ***"

However near the Tavegia v. Bromley discussion approached a consideration of the constitutionality of a statute similar to the one now before us, and regardless of the future necessity of our deciding whether the subsection in controversy violates the Constitution on the due process ground, it is unnecessary for us now to consider the points of possible unconstitutionality designated in the reserved question. Neither are we called upon to decide whether a driver's license constitutes a *right* or privilege, because subsection (4) presents a question of the propriety of delegation of power between departments of the State government. This question is paramount, even though the parties have not urged it. We do not mean that one constitutional provision is more important than another, but the elimination of procedural difficulties is often prerequisite to a decision on substantive law. We think that the provision of subsection (3) (c) for the revocation of a driver's license without reason or cause, is an unconstitutional delegation of legislative power to the executive department. A review of cases on this subject discloses that courts in discussing the delegation of power often categorize a license as being either a right or a privilege. In so doing, they sometimes give consideration to the type of act for which license has

been issued. Occasionally, they indicate that an administrative officer or bureau may be permitted to revoke a license, even though no definite rule has been prescribed therefore — especially in dealing with matters such as intoxicating liquors, gambling, bawdy-houses, etc. We do not find it necessary at this time to decide whether a license is a right of a privilege. Nor is it essential to classify and compare the various activities for which licenses are issued. The entire omission of cause for license revocation (even in the opinion of the administrators) distinguishes the questioned statute from those considered in the examined cases.

In Thompson v. Smith, 155 Va. 367, 154 S.E. 579, 581, 584, 71 A.L.R. 604, the court discussed the rights of a police chief to revoke drivers' licenses under a provision of the city ordinances which stated: "The *Chief of Police is authorized and directed to revoke* [subject to right of appeal] *the permit of any driver who, in his opinion, becomes unfit to drive an automobile on the streets of the city.*" In the course of the opinion, it was stated:

"It is a fundamental principle of our system of government that the rights of men are to be determined by the law itself, and not by the let or leave of administrative officers or bureaus. This principle ought not to be surrendered for convenience or in effect nullified for the sake of expediency. It is the prerogative and function of the legislative branch of the government, whether state or municipal, to determine and declare what the law shall be, and the legislative branch of the government may not divest itself of this function or delegate it to executive or administrative officers.

" * * * the reasonable discretion which may be vested in * * * administrative officers is limited to a discretion in its essence ministerial and not legislative * * *.

*    *    *    *    *

" * * * The majority of the cases lay down the rule that statutes or ordinances vesting discretion in ad-

ministrative officers and bureaus must lay down rules and tests to guide and control them in the exercise of the discretion granted in order to be valid * * *."

It is also interesting to note the view of the United State Supreme Court, as well as that of our own court, on the general subject of improper delegation of power.

In Mutual Film Corp. v. Industrial Commission of Ohio, 236 U. S. 230, 240, 245, 35 S.Ct. 387, 390, 59 L.Ed. 552, Ann.Cas. 1916C, 296, the court discussed censorship of moving pictures under a statute, 103 Ohio Laws, p. 399 § 4, which provided:

" 'Only such films as are, in the judgment and discretion of the board of censors, of a moral, educational, or amusing and harmless character shall be passed and approved by such board.' * * * "

and, among other things, said:

" * * * Undoubtedly the legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply. * * *

"The objection to the statute is that it furnishes no standard of what is educational, moral, amusing, or harmless, and hence leaves decision to arbitrary judgment, whim and caprice * * *."

In State v. Grimshaw, 49 Wyo. 192, 53 P.2d 13, 16, our court in discussing the rights of the Public Service Commission to promulgate certain rules, pointed out the dangers of "traveling into the shadow of constitutional inhibitions against delegation of legislative power," and quoted People v. Belcastro, 356 Ill. 144, 190 N.E. 301, 304, 92 A.L.R. 1223, with a reference to I Sutherland Statutory Construction (2d Ed.), p.148, as follows:

" 'If the Legislature leaves to administrative officers the determination of what the law shall be, or to determine what acts are necessary to effectuate the law, such delegation of authority is void.' "

The foregoing cases relate primarily to an unconstitutional delegation of power by the legislative department to the executive department, and we think they are persuasive under the present status of the law. If we had considered that a loose construction of subsection (4) was indicated and had held that the word "cause" in the penultimate sentence of that subsection in fact permitted a judicial review of the Motor Vehicle Division's revocation, then, there would have been no alternative but to admit that the legislature had improperly delegated its powers to the judiciary. However, "cause" as used in subsection (4) is limited in its application to the "power to modify or change * * * [the court's] temporary order."

Aside from the question of constitutionality, it would seem that an administrator of any act might be reluctant to be saddled with the responsibility of revoking licenses under a situation where there exists no rules governing the subject; but regardless of the viewpoint of those charged with the responsibility for administering the Act, the constitutional provisions are controlling. Incidentally, it seems unfortunate that Wyoming, in the past, has adopted sections of uniform vehicle codes piecemeal and in desultory fashion, instead of considering comprehensive legislation based upon the wide array of material available on the subject.

We find that subsection (3) (c) and subsection (4), as it relates to subsection (3) (c), violate the provisions of § 1, Art. 2, Constitutional of Wyoming, in that the

legislative department has improperly attempted to delegate its powers to the executive department.

Question answered.