**CITY OF LARAMIE, Petitioner,**

v.

**Jan Alan MENGEL and Thomas B. Johnson, Respondents.**

**No. 83–12.**

Supreme Court of Wyoming.

Nov. 4, 1983.

Rose, Brown, JJ., and Guthrie, Justice, Retired, concurred specially and filed opinions.

A.G. McClintock, Atty. Gen., Allen C. Johnson, Sr. Asst. Atty. Gen., and Michael Sue Haram, Asst. City Atty., City of Laramie, and Sp. Asst. Atty. Gen., for petitioner.

No appearance for respondents.

Before THOMAS, ROSE, BROWN, and RAPER,* JJ., and GUTHRIE, J., Retired.**

THOMAS, Justice.

There are two issues presented in this particular case. The threshold question is whether this court should issue a writ of certiorari to the Municipal Court of the City of Laramie for the purpose of reviewing a ruling of the judges of that court on a question of substantive law. If such review is available, the substantive question to be resolved is whether the Municipal Judges of the City of Laramie erred in their conclusion that § 31–6–105(f), W.S.1977, as adopt-

ed and made applicable within the City of Laramie pursuant to § 10.24.090, Laramie Municipal Code,[1] is unconstitutional because it requires the accused to incriminate himself contrary to the provisions of the Fifth Amendment to the Constitution of the United States of America and Art. I, § 11 of the Constitution of the State of Wyoming.[2] We will hold that review of the ruling of the Municipal Court of the City of Laramie can be accomplished pursuant to a writ of certiorari issued by this court, and that the ruling of the Municipal Judges of the Municipal Court of the City of Laramie that § 31–6–105(f), W.S.1977, is unconstitutional is incorrect. The ruling of the Municipal Judges of the Municipal Court of the City of Laramie therefore will be reversed.

After this court had issued a Writ of Certiorari, the City of Laramie filed its brief in which it presents the following articulation of the substantive issue:

"Was it error for the Municipal Judges of the City of Laramie to hold that admission of evidence of refusal of an accused to submit to a chemical test to determine blood alcohol content violates the privilege against self incrimination, thereby declaring unconstitutional Section 31–6–105(f), W.S.1977 (1982 Cum.Supp.), and its counterpart in Enrolled Ordinance No. 719, Laramie Municipal Code?"

The ruling alluded to was contained in a joint order issued on November 29, 1982, by both of the Municipal Judges of the Municipal Court of the City of Laramie in the

---

* Retired June 13, 1983, but continued to participate in the decision of the court in this case pursuant to order of the court entered June 13, 1983.

** ROONEY, C.J., having recused himself, GUTHRIE, J., Retired, was assigned pursuant to order of the court entered January 2, 1979.

1. Section 31–6–105(f), W.S.1977, provides as follows:

"If a person under arrest refuses to submit to a chemical test under the provisions of this act, evidence of such refusal shall be admissible in any administrative, civil or criminal action or proceeding arising out of acts alleged to have been committed while the arrested person was driving or in actual physi-

cal control of a motor vehicle while under the influence of intoxicating liquor, to a degree which rendered him incapable of safely operating said motor vehicle."

Section 10.24.090 of the Laramie Municipal Code is identical to the language of § 31–6–105(f), W.S.1977.

2. The pertinent portion of the Fifth Amendment to the Constitution of the United States of America reads as follows:

"No person * * * shall be compelled, in any criminal case to be a witness against himself * * *."

The parallel language of Art. I, § 11 of the Constitution of the State of Wyoming states:

"No person shall be compelled to testify against himself in any criminal case * * *."

cases of the two respondents, following independent deliberation and consultation between the judges. The joint order concluded that the refusal to submit to a chemical test was testimonial in nature, and it then provided:

"c. Any comment by the prosecution upon the Defendant's refusal to take a chemical test is improper, violating the Defendant's right against self-incrimination.

"d. Section 31-6-105(f), Wyoming Statutes 1977, and § 10.24.090 of the Laramie Municipal Code, when applied to a defendant charged with driving under the influence who refuses to take a blood alcohol chemical test, insofar as they permit evidence to be presented at any criminal action or proceedings of such refusal, specifically violate the right against self-incrimination provided by the Fifth Amendment to the United States Constitution and Article 1, § 11 of the Wyoming Constitution."

The underlying facts leading to this joint order can be stated briefly. The two respondents in this case were arrested on separate occasions, and each was charged with driving while under the influence of intoxicating beverages in violation of § 10.-24.090, Laramie Municipal Code, and § 31-5-233, W.S.1977 (Cum.Supp.1982). Each was advised of the provisions of the Implied Consent Law, §§ 31-6-101 to 31-6-106, W.S.1977, and each of the respondents refused to submit to any chemical test of his blood, breath, or urine. See *State v. Marquez*, Wyo., 638 P.2d 1292 (1982); and *State v. Chastain*, Wyo., 594 P.2d 458 (1979).

On November 17, 1982, there was filed on behalf of the respondent Mengel a Motion in Limine, seeking to limit evidence presented by the city in its case in chief or in rebuttal at the respondent's trial. In a memorandum brief filed in support of this Motion in Limine the argument was submitted that the admission of evidence of the respondent's refusal to submit to chemical testing would violate the protection against self-incrimination found in both the federal and state constitutions. The further argu-

ment was made in the memorandum brief that such evidence was not relevant and was without probative value in that it did not tend to prove any material issue in the case and could only serve to arouse prejudice against the respondent. On November 19, 1982, a Motion to Suppress, similar in tenor, was presented on behalf of the respondent Johnson. As in the other case, it was argued in support of the Motion to Suppress that the Implied Consent Law, §§ 31-6-101 to 31-6-106, W.S.1977, provided a statutory right of refusal, and the exercise of that statutory right could not be used as evidence at the trial against the respondent. On behalf of the respondent Johnson the argument was made that to the extent that the Implied Consent Law permitted the admission of such evidence it did violate the constitutional privilege against self-incrimination and therefore could not stand.

It was after the argument on these motions before the respective municipal judges assigned to hear the two cases that the order of November 29, 1982, which was quoted above, was issued granting the motions of the respective respondents. Further language of the order prohibited the City of Laramie from permitting any of its witnesses to comment upon the refusal of either respondent to take a blood-alcohol chemical test, or to comment directly or indirectly in any way concerning such refusal.

On December 3, 1982, the City of Laramie filed a Notice of Action, stating that it intended to file a petition in the District Court for the Second Judicial District, County of Albany, State of Wyoming, seeking appropriate relief from the order of November 29, 1982, by means of a writ of mandamus or writ of prohibition. The notice stated that the City of Laramie held the view that the order of the municipal judges was erroneous; that the issue was one of importance which must be determined by a court of record with access to a final ruling by the Supreme Court of the State of Wyoming; urged that the order entered by the municipal court was invalid

and unenforceable because the statutory procedures to raise constitutional questions regarding the validity of ordinances and statutes found in § 1–37–113, W.S.1977, were not followed, with the result that the municipal court was deprived of any jurisdiction to invalidate the state statute; and argued further that because of the status of the municipal court and the uncertainty of rights of appeal the court was without jurisdiction to invalidate municipal ordinances and must be required to refer any such matters to a court of competent jurisdiction. The City of Laramie also requested that further proceedings in the pending cases and any similar cases be continued until the determination of the issues in the action which it intended to file. On the same day, the municipal judges responded to the Notice of Action in a letter in which the city attorney and his assistants were advised that both judges were convinced that their original decision was correct and that they would not postpone any pending cases. The letter further stated that "until such time as a court of greater jurisdiction decides to the contrary, the decision will stand: Section 10.2.090 of the Laramie Municipal Code and Wyoming Statutes (31–6–105(f), (1977)) are unconstitutional."

On December 8, 1982, one of the municipal judges who had joined in issuing the order of November 29, 1982, wrote to the city attorney and his assistants, noting that the case of *South Dakota v. Neville,* —— U.S. ——, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), had been argued before the Supreme Court of the United States that morning. The judge advised the city that the issue of whether a refusal to take a blood-alcohol test is admissible apparently would arise in a case then pending in the Municipal Court of the City of Laramie. The judge stated in his letter that while he did not anticipate any change in the ruling which previously had been made, the City of Laramie would be free to again argue the issue if it so desired. Following that letter a Notice of Intent to File a Bill of Exceptions was filed by the city attorney, in conjunction with the Wyoming Attorney General, on January 4, 1983. This pleading was signed, and

made a part of the record by the municipal court the following day, and on January 10, 1982, a Petition for Permission to File Bill of Exceptions was filed in this court by the City of Laramie, joined in by the Attorney General of the State of Wyoming.

On January 24, 1983, this court issued an Order Granting Writ of Certiorari, noting that § 7–12–102 through § 7–12–105, W.S. 1977, pertaining to bills of exceptions were not applicable in an instance in which the accused is not charged with an offense against the laws of the State of Wyoming, and that this statutory proceeding was not available with respect to a prosecution in a municipal court for violation of an ordinance. *City of Sheridan v. Cadle,* 24 Wyo. 293, 157 P. 892 (1916). Because it appeared from the petition filed by the city that there were important constitutional issues to be decided, this court construed the petition of the city as a petition for writ of certiorari which the court is authorized to issue by Art. V, § 3, of the Constitution of the State of Wyoming. See *State ex rel. Pearson v. Hansen,* Wyo., 409 P.2d 769 (1966); *Call v. Town of Afton,* 73 Wyo. 271, 278 P.2d 270 (1954); *State ex rel. Loomis v. Dahlem,* 37 Wyo. 498, 263 P. 708 (1928); and *City of Sheridan v. Cadle,* supra. As a part of that order a schedule for briefing and answer by the respondents was set forth. A writ of certiorari which commanded the municipal judges to send to this court the record and proceedings in the respective cases was issued simultaneously with the order.

At this juncture we pause to note that the cases against the respective respondents have been concluded. A jury trial was held in Johnson's case on November 29, 1982, and even though the evidence of his refusal to submit to a chemical test was not admitted, he was found guilty and sentenced to ten days in jail and a fine of $500, with a portion of the fine and sentence suspended. The case against the respondent Mengel was resolved on December 6, 1982, when he appeared before the municipal court and changed his plea to guilty. Neither of the

respondents has appealed from his conviction.

On February 7, 1983, because of the stated intention of the Municipal Judges of the Municipal Court of the City of Laramie to apply the same rule, this court granted a motion by the city and entered an Order Staying Similar Proceedings until further order of this court. Further, on February 2, 1983, this court granted a motion presented by one of the municipal judges to file an amicus curiae brief supporting the position of the two respondents in this case.[3] Despite the permission granted by this court, no brief from the respondents directly or from anyone as amicus curiae has been presented to this court for its consideration.

We turn first to the justification for review by virtue of a writ of certiorari.

■ We find that other courts have recognized that the writ of certiorari was a method for reviewing decisions of lower courts at common law. E.g., *Sutterfield v. District Court In and For County of Arapahoe*, 165 Colo. 225, 438 P.2d 236 (1968); *Shoemaker v. State*, Del., 375 A.2d 431 (1977); *Powers v. Schwartz*, Fla.App., 357 So.2d 764 (1978); *Fischer v. Bedminster Tp., Somerset County*, 5 N.J. 534, 76 A.2d 673 (1950); *Commonwealth v. Branch*, 207 Pa. Super. 137, 215 A.2d 392 (1965); *State v. Pigford*, Tenn., 572 S.W.2d 921 (1978); *State v. De Silva*, 105 Tex. 95, 145 S.W. 330 (1912); *Higgins v. Burton*, 64 Utah 550, 232 P. 917 (1924); *State v. Whitney*, 69 Wash.2d 256, 418 P.2d 143 (1966); and *Ashworth v. Hatcher*, 93 W.Va. 323, 128 S.E. 93 (1925). We do not find in the precedents in this state cited above a rejection of that proposition. Article V, § 3 of the Constitution of the State of Wyoming of Wyoming states in pertinent part:

" * * * The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. * * *."

We recognize that there are jurisdictions which apparently limit the function of the writ of certiorari to test the exercise of jurisdiction by subordinate courts. See *Call v. Town of Afton*, supra. In our state, as was true under the common law, this has been the traditional function of the writ of prohibition. Eg., *Osborne v. District Court of Ninth Judicial District*, Wyo., 654 P.2d 124 (1982); *State ex rel Peterson v. District Court*, Wyo., 617 P.2d 1056 (1980); *State ex rel. Weber v. Municipal Court of Town of Jackson*, Wyo., 567 P.2d 698 (1977). We then conclude that in referring to the writ of certiorari in the same phrase as the writ of prohibition the framers of the Constitution of the State of Wyoming must have intended some different function for the two writs and did not intend to limit the writ of certiorari as it had been utilized under the common law.

In *Call v. Town of Afton*, supra, Justice Blume discussed the variations given to the scope of the writ of certiorari. Speaking for the court, he wrote:

"We thus find, on the question before us, holdings of many variegated hues. We have no reason to doubt that the writ of certiorari subserves a good purpose in many cases, particularly when an appeal is in fact not plain, speedy and adequate. But we shall not attempt to determine the full scope thereof and its limitations in this case, * * *."

Similarly in this case we do not feel compelled to define the full scope of the writ of certiorari, but paraphrasing other language quoted by Justice Blume we do identify an instance in which review is essential in order to prevent a failure of justice.

---

**3.** Cary R. Alburn, one of the municipal judges who had issued the November 29, 1982, order resigned from his position as municipal judge on December 31, 1982. In his motion to file an amicus curiae brief he explained that the respondents probably would not appear to argue the case because their cases already had been determined. He stated that the interests of justice required that this court have the benefit of a proper presentation by both sides of a significant constitutional issue. He urged that as one of the two judges who had made the decision he would be in a favorable position to explain the decision and justify it both by brief and argument.

Of course the writ of certiorari is not one of right, but its issuance is discretionary with the court. *City of Sheridan v. Cadle*, supra. We conclude that in this instance the court appropriately exercised its discretionary authority in issuing the writ of certiorari. The City of Laramie has no appeal from the order of its municipal judges, and it does not have available to it even the review encompassed by the statutes providing for a bill of exceptions. *City of Sheridan v. Cadle*, supra. The issue, further is one in which the people of the City of Laramie and the people of the State of Wyoming in other cities where the ruling of the Municipal Judges of the Municipal Court of the City of Laramie might be followed have an interest. The ruling itself is premised upon constitutional grounds and makes the issue one of constitutional magnitude. Even though these cases are moot, the record discloses the intention of the Municipal Judges of the Laramie Municipal Court to apply the same ruling in like cases, and consequently we can proceed to determine the issue. Cf., *Eastwood v. Wyoming Highway Department*, Wyo., 76 Wyo. 247, 301 P.2d 818 (1956).

The question sought to be reviewed in this case we perceive to be one of great public import and of first impression. We therefore have concluded to exercise our authority to review the issue pursuant to a writ of certiorari in our discretion so that the matter can be conclusively ruled upon. *Walters v. Cease*, Alaska, 388 P.2d 263 (1964); *Genda v. Superior Court, County of Pima*, 103 Ariz. 240, 439 P.2d 811 (1968); *Margolis v. District Court In and For County of Arapahoe*, Colo., 638 P.2d 297 (1981); *Lucini v. Mayhew*, 113 R.I. 641, 324 A.2d 663 (1974); *Boggess v. Morris*, Utah, 635 P.2d 39 (1981); and 14 C.J.S. Certiorari § 22(a), p. 157.

█ Addressing then the substantive question with respect to the admissibility of evidence that a person who has been arrested for driving under the influence of intoxicants has refused to submit to a chemical blood-alcohol test, we align ourselves with the analysis and rationale of the Supreme Court of the United States as expressed in *South Dakota v. Neville,* supra, 103 S.Ct. at 923:

" * * * [T]he values behind the Fifth Amendment are not hindered when the state offers a suspect the choice of submitting to the blood-alcohol test or having his refusal used against him. The simple blood-alcohol test is so safe, painless, and commonplace, see *Schmerber* [v. California], 384 U.S. [757], at 771, 86 S.Ct. [1826], at 1836 [16 L.Ed.2d 908], that respondent concedes, as he must, that the state could legitimately compel the suspect, against his will, to accede to the test. Given, then, that the offer of taking a blood-alcohol test is clearly legitimate, the action becomes no *less* legitimate when the State offers a second option of refusing the test, with the attendant penalties for making that choice. Nor is this a case where the State has subtly coerced respondent into choosing the option it had no right to compel, rather than offering a true choice. To the contrary, the State wants respondent to choose to take the test, for the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test.

"We recognize, of course, that the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make. But the criminal process often requires suspects and defendants to make difficult choices. See, e.g., *Crampton v. Ohio,* decided with *McGautha v. California,* 402 U.S. 183, 213–217, 91 S.Ct. 1454, 1470–1472, 28 L.Ed.2d 711 (1971). We hold, therefore, that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination."

The admissibility of such evidence no more violates Art. I, § 11 of the Constitution of the State of Wyoming than it does the Fifth Amendment of the Constitution of the United States. We hold such evi-

dence to be admissible in cases brought in our municipal courts for the violation of a municipal ordinance prohibiting the driving of an automobile while under the influence of intoxicants as well as in state prosecutions. We reverse the order of the Municipal Judges of the Municipal Court of the City of Laramie, and we dissolve the Order Staying Further Proceedings previously entered.

It is so ordered by the court.

ROSE and BROWN, JJ., and GUTHRIE, J., Retired, filed specially concurring opinions.

ROSE, Justice, specially concurring.

I agree with the holding of the majority that the writ of certiorari is the appropriate means by which this court should review the ruling of the Laramie municipal court with respect to the constitutionality of § 10.24.090 of the Laramie Municipal Code. I also agree that the ordinance in question does not violate the federal or state constitutions. I take exception, however, to the conclusion by the majority that the framers of the Wyoming Constitution, in providing for the issuance of the writ of certiorari, did not intend to limit the writ to its function at common law. 671 P.2d at 344.

In *City of Sheridan v. Cadle,* 24 Wyo. 293, 157 P. 892 (1916), one of the earliest cases in which this court considered the propriety of the issuance of the writ of certiorari, we said:

"The writ of certiorari is a common-law writ, and under the power conferred * * by the Constitution * * * it must be held that the court has authority to issue it * * * subject to the conditions and limitations controlling the writ at common law." (Emphasis added.) 157 P. at 894–895.

A petition for a writ of certiorari was before this court in *Call v. Town of Afton,* 73 Wyo. 271, 278 P.2d 270 (1954). There we said that this court was charged with "keeping the provisions of the constitution [concerning certiorari] within its proper limits." 278 P.2d at 273. We noted that

Wisconsin has a constitutional provision like ours and quoted from *Wardsworth v. Sibley,* 38 Wis. 484, 486 (1875), where the Wisconsin Supreme Court said:

"The constitution refers to the writ as it was used and applied in practice when the constitution was adopted, and did not intend to give it a scope or object different from its original and appropriate function."

The highest courts of other states, when asked to rule on the availability of the writ, have determined that where the parameters of certiorari are not specified in statutory or constitutional provisions, the common-law writ applies. *Sutterfield v. District Court in and for County of Arapahoe,* 165 Colo. 225, 438 P.2d 236 (1968); *Morris v. Apodaca,* 66 N.M. 421, 349 P.2d 335 (1960).

I reviewed the scope of the common-law writ of certiorari in my dissenting opinion in *Wright v. State,* Wyo., 670 P.2d 1090 (1983), and cited authority to the effect that certiorari is available where the lower court has proceeded illegally and no appeal or other means of review is permitted.

" ' * * * [I]t can generally be stated that certiorari will lie in two classes of cases, (1) whenever it is shown that the inferior court or tribunal has exceeded its jurisdiction; (2) whenever it is shown that the inferior court or tribunal has proceeded illegally, and no appeal is allowed or other mode provided for reviewing its proceedings. 10 Am.Jur. 527, Certiorari, § 5.' " Quoting from *Morris v. Apodaca,* supra, 349 P.2d at 336. 670 P.2d at 1111 (dissenting opinion).

The common-law writ of certiorari is described in Works, Courts and their Jurisdiction, 2nd Ed. (1897), at 698, as follows:

"The writ of *certiorari* is a writ by which the record of a proceeding in a lower court is removed into a higher court for review. It is one of the means by and through which superior courts exercise and enforce their supervisory power and control over courts and tribunals of inferior jurisdiction, and lies where the party aggrieved has no adequate and speedy remedy by the ordinary proceedings at

law, as, for example, by writ of error or appeal, or by motion in the court before which the action is pending."

The common-law writ is further identified in Works, supra, as a remedy designed to function in limited situations where review is not available or where the court in the first instance has exceeded its jurisdictional bounds:

"So the jurisdiction of the courts would be simple enough if the writ were regarded as in the nature of a writ of error, or appeal for the correction of errors of law, where neither of these remedies were allowed; and allowed, also, to test the jurisdiction of the court, and for that purpose only, whether a writ of error or appeal is allowed or not. It is quite evident that the common law writ was never intended to extend further than this. For one of these purposes it is in all essential respects a writ of error, and for the other a jurisdictional writ entirely, and only available where the judgment attacked is void for want of jurisdiction, either of the subject-matter or of the person." Works, supra, at 700–701, citing *Harris v. Barber,* 129 U.S. 366, 9 S.Ct. 314, 32 L.Ed. 697 (1889).

Until today this court has not deviated from the concept that certiorari issues "subject to the conditions and limitations controlling the writ at common law." *City of Sheridan v. Cadle,* supra, 157 P. at 895. We said in *State ex rel. Pearson v. Hansen,* Wyo., 409 P.2d 769, 771 (1966):

"Certiorari * * * [is] a discretionary writ issuable only where there is no other adequate remedy. * * *" Citing *City of Sheridan v. Cadle,* supra, and *Call v. Town of Afton,* supra.

The majority say that the writ of certiorari, as authorized by our constitution, is not restricted to its common-law role. They reason that certiorari cannot be limited to testing jurisdiction since that "has been the traditional function of the writ of prohibition."

" * * * We then conclude that in referring to the writ of certiorari in the same phrase as the writ of prohibition *the framers of the Constitution of the State of Wyoming* must have intended some different function for the two writs and *did not intend to limit the writ of certiorari as it had been utilized under the common law.*" (Emphasis added.) 671 P.2d at 344.

The fallacy in this argument is that, at common law, both writs were used to test jurisdiction, but a distinction was made as to the objectives of the two writs. The common-law writ of prohibition is *preventive* in nature (used to prevent an anticipated act in excess of jurisdiction), while certiorari is *remedial* (used to quash an action taken in excess of jurisdiction). Works, supra, at 628, 704. Thus, the two writs are not duplicative, and it is erroneous to say that the framers of the constitution intended to expand certiorari beyond its common-law function by referring to certiorari in the same phrase as prohibition. Moreover, as we have seen, certiorari can be confined to its common-law role and still permit review of questions of law other than jurisdiction, so long as no other means of review is available.

In the case at bar, the City of Laramie has available no statutory procedure by which to obtain review of an adverse ruling that involves not only a question of law, but is of constitutional magnitude. *City of Sheridan v. Cadle,* supra. Therefore, the issuance of the writ in this case is consistent with the common-law function of certiorari, as contemplated by Art. 5, § 3 of the Wyoming Constitution. For this reason I concur in the majority holding that this court properly exercised its discretionary authority in granting certiorari.

BROWN, Justice, specially concurring.

I agree with the majority's conclusion that the Municipal Court of the City of Laramie was in error when it ruled § 31–6–105(f), W.S.1977, unconstitutional. I also agree with the majority's reasoning as to why the municipal court was in error. I am not convinced, however, that this court properly treated the petition to file a bill of

exceptions as a petition for a writ of certiorari.

GUTHRIE, Justice, Retired, specially concurring.

I concur. Although it is my view that the issuance of a writ of certiorari should be reserved only for those most exceptional cases, in this case the factual situation justifies such action because there appears no other satisfactory remedy. If the court should abstain from consideration of this proceeding, it would be leaving an important question open and evading its duty of exercising "general supervisory control" of such courts. This would further serve to suggest to municipal judges that they hesitate to anticipate constitutional holdings which may impede and confuse the enforcement of municipal ordinances.