The STATE of Wyoming, Petitioner,

v.

Barry SODERGREN, Respondent.

No. 83–110.

Supreme Court of Wyoming.

June 26, 1984.

522

A.G. McClintock, Atty.Gen., Allen C. Johnson (argued), and John W. Renneisen, Sr. Asst. Attys. Gen., and Michael L. Hubbard, Asst. Atty. Gen., for petitioner.

Harry E. Leimback (argued), and Susan K. Overeem, Casper, for respondent; Gerald M. Gallivan (argued), Laramie, amicus curiae.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROONEY, Chief Justice.

This matter is before us on a Writ of Certiorari. The issue presented by Petitioner is:

"Did the trial court err in dismissing the information for lack of jurisdiction maintaining that the respondent could not be prosecuted for involuntary manslaughter in a vehicular homicide not involving alcohol?"

Respondent adds as an issue:

"Does a writ of certiorari lie to review the district court decision dismissing the charges based on a lack of subject matter jurisdiction?"

We answer both questions in the affirmative, but set some perimeters with reference to the second one, remanding the case for additional proceedings.

Barry Sodergren (Respondent) was charged with two counts of involuntary manslaughter for the August 23, 1982 vehicular deaths of Mia L. Olsen and Evelyn Olsen. After being bound over to the district court, Respondent filed a motion to dismiss, based on an alleged lack of subject matter jurisdiction in the district court. The district court granted the motion and dismissed the case, explaining in a decision letter that the vehicular homicide statute (§ 31–5–1117, W.S.1977, infra) and the involuntary manslaughter statute (§ 6–4–107, W.S.1977, infra) prescribe substantially the same conduct with different penalties (one being a felony and the other a misdemeanor); that they are repugnant and inconsistent; and that a later specific statute controls over a general statute. Therefore, the court reasoned, the Respondent must be prosecuted under the vehicular homicide statute and not under the manslaughter statute, and thus the district

court did not have jurisdiction to try the case.[1]

This court entered its Order Denying Application to File Bill of Exceptions on June 8, 1983, and its Order Granting Certiorari on June 28, 1983.

## MANSLAUGHTER CHARGE

We must address two aspects of this issue: (1) the relationship between the manslaughter statute and the vehicular homicide statute, and (2) the constitutionality of the vehicular homicide statute.

### I

The confusion over the relationship between the two statutes has gone on for many years. In *State v. Cantrell,* 64 Wyo. 132, 186 P.2d 539 (1947), a vehicular death involving alcohol, we said that the negligent homicide statute did not impliedly repeal the involuntary manslaughter statute. However, starting in 1977, in a line of cases from *Thomas v. State,* Wyo., 562 P.2d 1287 (1977), through *Bartlett v. State,* Wyo., 569 P.2d 1235 (1977), and then to *Lopez v. State,* Wyo., 586 P.2d 157 (1978), we finally held at page 160:

" * * * that all vehicular homicides, short of murder and voluntary manslaughter, are prosecutable exclusively as a violation of § 31–5–1115, W.S.1977. We overrule all decisions of this court to the contrary. * * * "

7A Am.Jur.2d Automobiles and Highway Traffic § 340, p. 524, states, with reference to vehicular homicide statutes:

" * * * They are the product of comparatively recent legislation prompted by the frequency of tragedies on the highways and the difficulty of obtaining convictions of motorists under the general statutes on homicides, juries being loath to attach the onus of 'manslaughter' to those causing the death of a person through the operation of a motor vehicle."

The "carnage on the highways" can lead to speculation as to whether or not a proper and reasonable classification was invoked when a distinction was made relative to involuntary homicide on the basis of the instrument used to cause the death, i.e., a motor vehicle as distinguished from a club, poison, knife, gun, etc., with a lesser penalty attaching to the use of one of the instruments.[2]

In 1977, § 31–5–1115, W.S.1977, provided:

"(a) When the death of any person ensues within one (1) year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide.

"(b) Any person convicted of negligent homicide shall be punished by imprisonment for not more than one (1) year or by fine of not more than one thousand dollars ($1,000.00), or by both such fine and imprisonment.

"(c) The director shall revoke the license or permit to drive and any nonresident operating privilege of any person convicted of negligent homicide."

The manslaughter statute, § 6–4–107, W.S.1977, provided:

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty (20) years."

As a result of our suggestion that the legislature clarify its intent in this area, it responded in 1979 with amendments to

---

1. Both the vehicular homicide and the involuntary manslaughter statutes in question here were substantially amended by the new criminal code which went into effect on July 1, 1983. See infra.

2. It has been held that a motor vehicle may constitute a dangerous instrument or deadly weapon, e.g., *State v. Caldwell,* 231 S.C. 184, 98 S.E.2d 259 (1957).

both statutes, causing them to read as follows:

Section 6-4-107, W.S.1977 (Cum.Supp. 1979):

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, except as provided in W.S. 31-5-1117, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty (20) years."

Section 31-5-1117(a), (b), W.S.1977 (Cum-Supp.1979):

"(a) Whoever, except when the violation of law involves culpable neglect or criminal carelessness, unlawfully and unintentionally, but with a conscious disregard of the safety of others, causes the death of another person while engaged in the violation of any state law or ordinance applying to the operation or use of a vehicle or to the regulation of traffic is guilty of homicide by vehicle when the violation is the proximate cause of death.

"(b) Any person found guilty of homicide by vehicle shall be fined not more than two thousand dollars ($2,000.00) or imprisoned in the county jail for not more than one (1) year, or both."

In 1982 the legislature added aggravated vehicular homicide to § 31-5-1117 so that it read as follows at the time Barry Sodergren was charged with involuntary manslaughter:

"(a) Whoever, while driving any vehicle under the influence of either intoxicating liquor or a controlled substance, or a combination of both, to a degree which renders him incapable of safely driving a vehicle, causes the death of another person shall be guilty of aggravated homicide by vehicle, and upon conviction thereof, shall be punished by imprisonment in the penitentiary for not more than twenty (20) years.

3. Section 31-5-1115, W.S.1977.

"(b) Whoever, except when the violation of law involves culpable neglect or criminal carelessness, unlawfully and unintentionally, but with a conscious disregard of the safety of others, causes the death of another person while engaged in the violation of any state law or ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except those laws or ordinances relating to conduct set forth in subsection (a) of this section, is guilty of homicide by vehicle when the violation is the proximate cause of death and upon conviction thereof, shall be fined not more than two thousand ($2,000.00) dollars or imprisoned in the county jail for not more than one (1) year, or both." Section 31-5-1117(a), (b), W.S.1977 (Cum.Supp.1982).

Petitioner, the State of Wyoming, argues that the 1979 and 1982 amendments were passed to change the law as it existed after *Lopez*, supra, (i.e., to change the holding that all vehicular deaths, short of murder and voluntary manslaughter were to be charged as vehicular homicide and not as involuntary manslaughter). Petitioner argues that it is presumed that when an amendment is enacted to an existing statute that some change in the existing state of the law was intended and that the court should endeavor to make such amendment effective, *Brown v. State*, Wyo., 590 P.2d 1312, 1314 (1979); that it is not reasonable that the legislature would enact a law to declare what is already the law, *DeHerrera v. Herrera*, Wyo., 565 P.2d 479, 483 (1977); and that amendment of the statutes presumes an intention to change the existing law and the courts should endeavor to give some effect to the amendment, *Stolldorf v. Stolldorf*, Wyo., 384 P.2d 969, 972 (1963).

Respondent argues that the amendments were passed to bring the statutes into line with the case law, but if this was not the intent, then the legislature failed to accomplish any other result, there being no discernible distinction between the standards of "reckless disregard of the safety of others" [3] and "conscious disregard of the safe-

ty of others"[1], which were the substantive changes between the 1977 vehicular homicide statute on the one hand and the 1979 and 1982 vehicular homicide statutes on the other.

■ This court had held earlier, in *State v. Thomas*, supra, that there was no operative distinction between the standards of "culpable neglect or criminal carelessness"[5] and "reckless disregard of the safety of others." In *Thomas*, supra, 562 P.2d at 1289, the question was:

"Did § 31–232(a) [vehicular homicide] and earlier related enactments impliedly repeal that part of § 6–58 [manslaughter], which states, 'or by any culpable neglect or criminal carelessness,' insofar as it affects deaths resulting from the operation of a motor vehicle?"

In reaching the holding of that case, we said that the conduct which is made criminal by the challenged portion of § 6–58 [manslaughter] has as an element carelessness which is gross implying an indifference to consequences:

"'* * * and the term "gross negligence" means something more than mere negligence. It means wantonness and *disregard of the consequences which may ensue,* and indifference to the rights of others that is equivalent to a criminal intent. (Emphasis supplied.) [Citations.]'

"Also * * * when discussing gross negligence it was said:

"'* * * In civil cases the courts of this state define it as such negligence as evinces *a reckless disregard of human life or bodily* injury.' (Emphasis supplied.)" 562 P.2d at 1290.

"Because § 31–232(a) proscribes substantially the same behavior as does the questioned portion of § 6–58, and because the penalty provided in § 31–232(a) is substantially less, we must hold that these two statutes are repugnant and conflicting insofar as the latter portion of the involuntary manslaughter statute is concerned and that therefore § 31–232(a) does repeal by implication the last phrase in § 6–58 insofar as it is applied to deaths occasioned by negligent operation of a motor vehicle." 562 P.2d at 1291.

Legislative intent aside,[6] one of the questions in this case thus must be whether the reasoning of this court in Thomas and related cases is applicable under the statutes in effect at the time Respondent was charged. Or, in other words, do the two statutes in question provide different punishments for identical acts and are they therefore repugnant and inconsistent? And, if so, which controls?

"Repeals by implication are not favored, *State v. Cantrell*, supra, 186 P.2d at 543; but this court has not hesitated to apply this in a proper case, *Longacre v. State*, Wyo., 448 P.2d 832, 834; *Blount v. City of Laramie*, Wyo., 510 P.2d 294, 296; *Tucker v. State ex rel. Snow*, 35 Wyo. 430, 251 P. 460, 465. If the statutes cannot stand together and if they are repugnant by virtue of relating to the same subject and are directed at a distinct offense with the same object, the earlier cannot stand, *State v. Cantrell*, supra. In *Haines v. Territory*, 3 Wyo. 167, 13 P. 8, 11, the court recognized the rule that a later specific statute controls over a general statute." *Thomas v. State*, supra, 562 P.2d at 1290.

We later said in *Bartlett v. State*, supra, 569 P.2d at 1241:

---

**4.** Section 31–5–1117, W.S.1977 (Cum.Supp.1979 and Cum.Supp.1982).

**5.** The terms "culpable neglect" and "criminal carelessness" are synonymous and proscribe behavior which is not only more than ordinary negligence but which is criminal or culpable in character. *Brown v. State*, Wyo., 661 P.2d 1024 (1983); *State v. Thomas*, supra; *State v. McComb*, 33 Wyo. 346, 239 P. 526, 41 A.L.R. 717 (1925).

**6.** One law review Case Notes author, in analyzing *Thomas v. State*, supra, refers to legislative intent as follows:

"* * * Determining the specific legislative intent behind a particular law is somewhat akin to searching for the Loch Ness monster; submerged, lurking beneath the surface of the statute, the intent might be there—but then again, probably not. * * *" Case Notes, 13 Land & Water L.Rev. 595, 601 (1978).

" * * * As in *Thomas v. State*, supra, our task is to determine if the statutes can stand together, or if they are repugnant by virtue of relating to the same subject and are directed at a distinct offense with the same object. *State v. Cantrell*, supra, [186 P.2d] at 542. We approach with a full realization that repeals by implication are not favored. *Thomas v. State*, supra. * * * "

The standards in the statutes at issue in this case are the following: Respondent was charged, in the criminal complaint, with two counts of " * * * kill[ing] a human being * * * without malice express or implied, by culpable neglect or criminal carelessness, in violation of W.S.1977, § 6–4–107 * * * ." The district court, in its Decision Letter of November 16, 1982, phrases the question as:

" * * * [W]hether a charge can be brought under the Manslaughter Statute, W.S. § 6–4–107, in a case not involving driving under the influence or whether such prosecutions must be restricted to the misdemeanor penalty of § 31–5–1117(b), which would remove the offense from the jurisdiction of this Court. * * * "

The district court judge goes on to say: "The State argues that a higher level of culpability is required under the manslaughter statute, where the standard is involving culpable neglect or criminal carelessness, as opposed to the vehicular homicide statute, which requires a conscious disregard of the safety of others. There is no meaningful distinction between the two. In *State v. Rideout*, 450 P.2d 452, the Court found that there was no operative distinction between 'careless disregard of the safety of others' and the definition of negligence necessary to support a manslaughter conviction. In the Thomas case, the Court found that there was no meaningful distinction between 'reckless disregard' and 'culpable neglect or criminal carelessness.' Similarly, there is no reason to believe that the offense is distinguished by the use of the language 'conscious disregard.' "

The logic of the district court judge is in accordance with our former holdings. There is no discernible difference between the standard of "reckless disregard" (which was held to be the equivalent of "culpable neglect or criminal carelessness") and "conscious disregard" which is used in the context of "unlawfully and unintentionally" doing that which is proscribed by the vehicular homicide statute. Therefore, if this were the only aspect of this issue, we would uphold the district court's ruling.

## II

However, the second aspect of this issue involves the constitutionality of the vehicular homicide statute in view of the ambiguity and internal inconsistency of subsection (b) of it. Section 31–5–1117(b) read in pertinent part:

"Whoever, except when the violation of law involves culpable neglect or criminal carelessness * * * but with a conscious disregard of the safety of others * * * ."

As "culpable neglect or criminal carelessness" is equivalent to "a conscious disregard of the safety of others," it is difficult to comprehend how you can have one "except" when the other exists. The legislature has created an element of the crime and then cancelled out that element. The legislature cannot be presumed to intend the elements remaining in the act to constitute a crime, i.e., death caused by an unintentional violation of a state law or ordinance applying to the operation or use of a vehicle or to the regulation of traffic, such as improper parking, failure to have license plate in place, or any act of simple negligence relative to a state law or ordinance concerning the operation or use of a vehicle. The statute is obviously unclear on its face. It is susceptible of more than one meaning. It is ambiguous. *State ex rel. Albany County Weed and Pest District v. Board of County Commissioners of Albany County*, Wyo., 592 P.2d 1154 (1979).

When a statute is ambiguous, the court resorts to general principles of statutory construction in an effort to ascertain

legislative intent. *Wyoming State Department of Education v. Barber*, Wyo., 649 P.2d 681 (1982); and *Sanches v. Sanches*, Wyo., 626 P.2d 61 (1981). In doing so, we must give effect to every word, clause and sentence and, if possible, construe the statute so that no part will be inoperative or superfluous. *State Board of Equalization v. Cheyenne Newspapers, Inc.*, Wyo., 611 P.2d 805 (1980); *State ex rel. Albany County Weed and Pest District v. Board of County Commissioners of Albany County*, supra; and *Haddenham v. City of Laramie*, Wyo., 648 P.2d 551 (1982). Legislative intent is the primary consideration in ascertaining the meaning of a statute. *Sanches v. Sanches*, supra; *Longacre v. State*, Wyo., 448 P.2d 832 (1968). Statutes are not to be given meaning which would have the effect of nullifying their operation if they are capable of any other interpretation, *Hayes v. State*, Wyo., 599 P.2d 558 (1979). But statutes are not to be interpreted to produce absurd results. *In re Romer*, Wyo., 436 P.2d 956 (1968); *Woolley v. State Highway Commission*, Wyo., 387 P.2d 667 (1963); and *Huber v. Thomas*, 45 Wyo. 440, 19 P.2d 1042 (1933).

Applying these principles to § 31–5–1117(b) as it was in effect at the time of the deaths, the two conflicting clauses cannot both be given effect inasmuch as such is the very cause of ambiguity. Also, as already noted, both clauses cannot be disregarded without an absurd result and one obviously not intended by the legislature. If the first clause were declared superfluous, i.e., if "except when the violation of law involves culpable neglect or criminal carelessness" were declared to be null and void, the obvious intent of the legislature to have the vehicular homicide statute be violated when such is involved would be thwarted.[7] If the second clause were declared superfluous, i.e., if with a "conscious disregard of the safety of others" were declared to be null and void, the obvious intent of the legislature to have such be the

necessary state of mind for a violation of the statute would be thwarted.

■ Since the statute is ambiguous and inconsistent as it stands, and thus inapplicable to a given situation, and since it cannot be given coherent meaning without thwarting the obvious legislative intent, there is no alternative to declaring the entire subsection, § 31–5–1117(b), as it existed at the time of the deaths, to have been unconstitutional and inoperative.

■ Although we do not ordinarily inquire into the constitutionality of a statute on our own motion, we do so where a case cannot be completely and effectively disposed of without such inquiry and decision. *Gorrell v. City of Casper*, Wyo., 371 P.2d 835 (1962); *Markey v. Connelly*, Wyo., 367 P.2d 964 (1962); and *Eastwood v. Wyoming Highway Department*, 76 Wyo. 247, 301 P.2d 818 (1956). Such is this case.

■ Requirement of a reasonable degree of certainty in legislation, especially in criminal law, is a well established element of due process. *Sanchez v. State*, Wyo., 567 P.2d 270 (1977); and *State v. Gallegos*, Wyo., 384 P.2d 967 (1963).

■ Inasmuch as the Respondent could not be properly prosecuted under § 31–5–1117(b), the court erred in dismissing the prosecution for lack of subject matter jurisdiction on the basis that prosecution was proper *only* under § 31–5–1117(b). The only statute under which prosecution could be had was the manslaughter statute under which Respondent was charged.

### CERTIORARI

■ The propriety of a writ of certiorari in matters such as this was decided in *City of Laramie v. Mengel*, Wyo., 671 P.2d 340 (1983), and in *State v. Heiner*, 680 P.2d 478 (Wyo.1984). The fallacies there set out in my specially concurring opinion in regard to Justice Rose's dissenting opinion are equally applicable to his dissenting

---

7. "Culpable neglect or criminal carelessness" is the language of the vehicular homicide statute, § 31–5–1117(b), W.S.1977 (Cum.Supp.1982).

opinion in this case. The issue in this case involves a constitutional question and is of great public import. However, we do serve notice on the bar that we will exercise our discretion to grant certiorari only in unusual circumstances and upon rare occasions.

The legislature has changed the statutes here involved by the enactment of a new criminal code. It has advised us that it is considering appropriate changes in the code in recognition that a new enactment of its magnitude will need some "shaking down."

The recent changes in the two pertinent statutes cause them to read:

"(a) A person is guilty of manslaughter if he unlawfully kills any human being without malice, expressed or implied, either:

"(i) Voluntarily, upon a sudden heat of passion; or

"(ii) Involuntarily, but:

"(A) In the commission of some unlawful act except as provided in W.S. 6–2–106; or

"(B) Recklessly.

"(b) Manslaughter is a felony punishable by imprisonment in the penitentiary for not more than twenty (20) years." Section 6–2–105, W.S.1977 (June 1983 Replacement).

"(a) Except as provided in subsection (b) of this section, a person who unlawfully and with criminal negligence causes the death of another person while operating a vehicle is guilty of homicide by vehicle and, upon conviction thereof, shall be fined not more than two thousand dollars ($2,000.00) or imprisoned in the county jail for not more than one (1) year, or both. Evidence of a violation of any state law or ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except for evidence of a violation of W.S. 31–5–233, is admissible in any prosecution under this subsection.

"(b) A person is guilty of aggravated homicide by vehicle and shall be punished by imprisonment in the penitentiary for not more than twenty (20) years, if, while driving a motor vehicle in violation of W.S. 31–5–233, he unlawfully causes the death of another person while driving a motor vehicle and the violation is the proximate cause of the death.

"(c) The division of motor vehicles shall revoke the license or permit to drive and the nonresident operating privilege of any person convicted of aggravated homicide by vehicle or of homicide by vehicle." Section 6–2–106, W.S.1977 (June 1983 Replacement).

"Recklessly" as used in § 6–2–105 is defined in § 6–1–104(a)(ix), W.S.1977 (June 1983 Replacement) as follows:

" 'Recklessly' means done with a conscious disregard of a substantial and unjustifiable risk that the person's conduct will result in the harm he is accused of causing."

"Criminal negligence" as used in § 6–2–105 is defined in § 6–1–104(a)(iii), W.S.1977 (June 1983 Replacement) as follows:

" 'Criminal negligence' means a great or excessive deviation from that standard of care which a reasonable, prudent person would exercise under the same or similar circumstances to avoid a substantial and unjustifiable risk of harm."

Section 31–5–233, W.S.1977, referred to in § 6–2–106, makes it a crime to drive a motor vehicle while under the influence of intoxicants or controlled substances.

As noted supra, the distinction between "culpable neglect or criminal carelessness," "reckless disregard for the safety of others," "conscious disregard for the safety of others," "gross negligence," "disregard of consequences which may ensue," "wantonness," "indifference to the rights of others that is equivalent to criminal intent," "evincing a reckless disregard of human life or bodily injury," is de minimus for the purpose of defining a criminal act.

There seems to be no distinction between "recklessly" as used in the present manslaughter statute and "criminal negligence" as used in the vehicular homicide statute. The present manslaughter statute

precludes the consideration of death resulting from driving under the influence as the commission of an unlawful act, but it does not do so for death resulting from "reckless" action. Both statutes were enacted at the same time.

Finally, attention is directed to the language in the current subsection (b) of § 6–2–106, supra, which indicates that one could not be prosecuted thereunder if the resulting death is of a pedestrian or of a passenger in a motor vehicle. It provides that the crime is committed by one "while driving a motor vehicle" causing death of a "person while driving a motor vehicle."

We may be able to ascertain legislative intent relative to these two current statutes. We are not now required to do so, but our comments may be helpful in obtaining an unquestioned expression of legislative intent on the problem which has persisted for so long relative to these statutes. We urge the legislature to make such expression.

Reversed and remanded.

THOMAS, Justice, specially concurring.

I agree that this case must be returned to the district court so that Barry Sodergren can be tried for manslaughter. I am not satisfied that the appropriate way to achieve that result is to declare that § 31–5–1117(b), W.S.1977, is unconstitutional. Rather than being ambiguous and internally inconsistent, the statute can be read together with the manslaughter statute, § 6–4–107, W.S.1977, to the end that both may stand. This would honor our usual reluctance to inquire into the constitutionality of a statute on our own motion. At the same time it would give effect to the intention of the legislature.

It seems very clear to me that the legislature excepted from the reach of § 6–4–107, W.S.1977, those unlawful acts "as provided in W.S. 31–5–1117." The unlawful acts provided in that statute are those which are encompassed by the phrase, "but with a conscious disregard of the safety of others, * * * while engaged in the violation of any state law or ordinance applying to

the operation or use of a vehicle or to the regulation of traffic." Excepted from § 31–5–1117(b), W.S.1977, are those instances "when the violation of law involves culpable neglect or criminal carelessness." A legislative intent that some homicides flowing from the operation of a motor vehicle could be prosecuted under the manslaughter statute is discernible from these reciprocatory exceptions.

The Supreme Court of Maine, concededly examining a different statutory framework, concluded that a statute proscribing "depraved indifference" homicide required an objective evaluation of the defendant's conduct in the eyes of a reasonable person. The court contrasted other crimes requiring reckless action which the Maine statute in part defined as a "conscious disregard" of a risk. The court stated that "conscious disregard" is a subjective state of mind, and that while the objective inquiry required no evidence of the defendant's subjective state of mind, the other offenses did. *State v. Goodall*, Me., 407 A.2d 268 (1979).

I am persuaded that the Wyoming legislature intended that result in the contemporaneous adoption of amendments to the vehicular homicide statute and the manslaughter statute in 1979, and that the legislative intent was not adjusted by the 1982 amendment to the negligent homicide statute. Thus, conduct which would match the Wyoming Pattern Jury Instruction defining "culpable neglect" and "criminal carelessness," that is of "a gross or flagrant character, such as would show wantonness or recklessness, and would demonstrate a reckless disregard of human life or the safety of others, or an indifference to consequences equivalent to criminal intent" would be objectively evaluated by the jury. Conversely a subjective evaluation of "conscious disregard of the safety of others" while violating a state law or ordinance relating to the operation of a motor vehicle would be required in order to convict of negligent homicide. That verdict would have to be based upon evidence of the defendant's subjective state of mind.

The district judge in dismissing this case relied upon *State v. Rideout*, Wyo., 450 P.2d 452 (1969), and concluded that because this court in that case ruled that "careless disregard of the safety of others" was not distinguishable from the definition of negligence necessary to support a manslaughter conviction the offenses are not now distinguished by the use of the language "conscious disregard." Recognizing the holdings of our earlier cases involving the manslaughter statute and the negligent homicide statute, we were in those cases considering the concept of implied repeal. Because of the contemporaneous action by the legislature I would not accept those as binding precedents in the instant case which assumes a different statutory scheme articulated by the legislature. The question of unconstitutionality is different from the question of implied repeal, and as the majority opinion would indicate we are foreclosed from a conclusion of implied repeal.

It is my view that when the operation of a motor vehicle involving culpable neglect or criminal carelessness causes a death the legislature intended that the case be prosecuted under the manslaughter statute, even though the evidence might disclose an incidental violation of a state law or ordinance applying to the operation or use of a vehicle or to the regulation of traffic. The legislature adopted the method it used and the phrase "conscious disregard" in order to avoid the pitfalls which the earlier decisions of this court seem to present. The elements of proof under the two statutes would not be exactly the same, and consequently they do not proscribe substantially the same conduct. See *Bell v. State*, Alaska, 598 P.2d 908 (1979); and *State v. Modica*, 58 Hawaii 249, 567 P.2d 420 (1977). Recognizing the viability of both statutes is the better approach to acknowledging the

legislative intent, and does offer some advantage to the defendant. Even taking into account our holding in *Balsley v. State*, Wyo., 668 P.2d 1324 (1983), it seems to me that in a prosecution for manslaughter if the evidence disclosed the commission of an unlawful act involving the operation of a motor vehicle, and there was evidence of the subjective state of mind of the defendant which would demonstrate conscious disregard, the defendant would be entitled to claim an instruction on the offense of negligent homicide. In such an instance the matter then would be left to the jury to determine which of the statutes the defendant had violated as a matter of fact. In my judgment this would be a satisfactory approach.

I agree that the case should be reversed and remanded to the district court for trial under the manslaughter statute, but I would do so under the foregoing rationale rather than declaring the negligent homicide provision unconstitutional.

ROSE, Justice, dissenting from the majority opinion and joining in Justice CARDINE'S dissenting opinion.[1]

In the case at bar, I would dissent from what the Chief Justice holds as he authors the majority opinion. But I would hold *with* him when he wrote in *State v. Selig*, Wyo., 635 P.2d 786, 788 (1981):

"A bill of exceptions is the exclusive means for the prosecution to seek review of an adverse ruling made during the trial. *State v. Heberling*, Wyo., 553 P.2d 1043 (1976); *State v. Benales*, Wyo., 365 P.2d 811 (1961); *State v. Ginther*, 53 Wyo. 17, 77 P.2d 803 (1938); *State ex rel. Gibson v. Cornwell*, 14 Wyo. 526, 85 P. 977 (1906). It is now a statutory proceeding, and the statutory requirements

---

1. Since this dissenting opinion was written, *State v. Heiner*, 680 P.2d 478, No. 83–83, decided May 15, 1984, has been published. I herewith, therefore, support the dissenting position that I took in *Heiner* with some of the same and with additional reasons.

Even though I hold in these opinions that this court has no jurisdiction to entertain writs of

certiorari, by reason of the majority opinions in *Heiner* and the case at bar my position is no longer the law of this state, and, therefore, I will look to the merits of the instant matter by joining with Justice Cardine in his dissent and I will hereafter vote with the other members of the court on the merits of each petition for a writ of certiorari.

must be met. *State v. Ginther*, supra, and *State ex rel. Gibson v. Cornwell*, supra."

And I would hold with Chief Justice Raper (now retired) when he wrote in *State v. Heberling*, Wyo., 553 P.2d 1043 (1976):

"A bill of exceptions is the only way by which the State may challenge and have reviewed any adverse ruling of the district court in criminal prosecutions. *State v. Benales*, Wyo.1961, 365 P.2d 811; *State v. Ginther*, 1938, 53 Wyo. 17, 77 P.2d 803. Even then, as provided in § 7–291, W.S.1957 [now § 7–12–105, W.S. 1977]:

" 'The judgment of the court in the case in which the bill was taken shall not be reversed nor in any manner affected, but the decision of the supreme court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered, or which may afterwards arise in the state.' "

It is, therefore, my judgment in this appeal that the writ of certiorari was improvidently granted. I say this for the reason that it is my firm opinion, as I have previously expressed in *State v. Heiner*, 680 P.2d 478 No. 83–83, decided May 15, 1984, that this court lacks jurisdiction to in criminal proceedings consider trial-court rulings in criminal proceedings which are adverse to the State of Wyoming unless they are presented here through the statutory bill-of-exceptions procedure.[2]

In *State ex rel. Gibson v. Cornwell*, 14 Wyo. 526, 85 P. 977 (1906), Chief Justice Potter, speaking for a unanimous court, wrote:

" * * * *It is only upon a compliance with the provisions of the statute in question [bill of exceptions] that this court obtains jurisdiction to review any ruling of the District Court adverse to the state in criminal prosecutions.*" (Emphasis added.) 85 P. at 979.

Originally, in the case at bar, the Attorney General petitioned for a bill of exceptions in reliance upon §§ 7–12–102 through 7–12–105, W.S.1977, Wyoming's bill-of-exceptions statutes. Thereafter, and for reasons which remain undisclosed—at least to me—he withdrew the petition and, in its stead, filed a petition for a writ of certiorari—a request which calls for the employment of an appellate remedy with respect to which only a bill of exceptions furnishes this court with jurisdiction and for which there is no other constitutional implementing authority contained anywhere in the criminal statutes of the State of Wyoming.

In *Mau v. Stoner*, 14 Wyo. 183, 83 P. 218 (1905), discussed infra, we held that the

2. The bill-of-exceptions statutes provide:

"§ 7–12–102 [W.S.1977]. Exceptions by prosecuting attorney; generally.

"The prosecuting attorney may take exceptions to any opinion or decision of the court during the prosecution of the cause; and the bill containing the exceptions upon being presented, shall, if it be conformable to the truth, be signed and sealed by the court, which shall be made a part of the record, and be in all respects governed by the rules established as to bills of exceptions in civil cases, except as herein provided."

"§ 7–12–103 [W.S.1977]. Same; proceedings on exceptions.

"The prosecuting attorney may present such bill of exceptions to the supreme court and apply for permission to file it with the clerk thereof, for the decision of such court upon the points presented therein; but prior thereto he shall give reasonable notice to the judge who presided at the trial in which the bill was taken, of his purpose to make such application, and if the supreme court shall allow such bill to be filed, such judge shall appoint some competent attorney to argue the case against prosecuting attorney, which attorney shall receive for his service a fee not exceeding one hundred dollars ($100.00), to be fixed by such court, and to be paid out of the treasury of the county in which the bill was taken."

"§ 7–12–104 [W.S.1977]. Same; when bill to be filed and decision rendered.

"If the supreme court shall be of the opinion that the questions presented should be decided upon, they shall allow the bill of exceptions to be filed and render a decision thereon."

"§ 7–12–105 [W.S.1977]. Same; effect of decision of supreme court.

"The judgment of the court in the case in which the bill was taken shall not be reversed nor in any manner affected, but the decision of the supreme court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered, or which may afterwards arise in the state."

appellate authority contemplated for this court under Art. 5, § 2 must be implemented by legislatively enacted rules and regulations as conceived by Art. 5, § 2 and Art. 5, § 18.[3] Mau holds unequivocally for the proposition that it was the intention of the legislature that rights and methods of appeal would be left to the legislature and that—absent implementing legislation—a litigant is possessed of no right of appeal. This would include the exercise of this court's constitutional certiorari authority since certiorari is an instrument of the Supreme Court's appellate jurisdiction under Art. 5, § 3, supra n.2.

On June 28, 1983, and by authority of a majority of the court, the Chief Justice—again without implementing statutory authority and in spite of the exclusory characteristics of the bill-of-exceptions statutes, and thus without jurisdiction—signed an order granting certiorari in the case at bar to which I appended this dissenting statement:

"I would deny the Petition for Writ of Certiorari and would have voted to grant the Petition for Bill of Exceptions which was first submitted by the Attorney General and later withdrawn."

In the majority opinion, the author writes:

"This matter is before us on a Writ of Certiorari,"

and one of the issues is identified as follows:

"'Does a writ of certiorari lie to review the district court decision dismissing the charges based on a lack of subject matter jurisdiction?'"

Concerning the propriety of granting certiorari, the majority say:

"The propriety of a writ of certiorari in matters such as this was decided in *City of Laramie v. Mengel,* Wyo., 671 P.2d 340 (1983), and in *State v. Heiner,* 680 P.2d 478 (Wyoming Supreme Court, No. 83–83, decided May 15, 1984). * * * The issue in this case involves a constitutional question and is of great public import. However, we do serve notice on the bar that we will exercise our discretion to grant certiorari only in unusual circumstances and upon rare occasions."

I take issue (a) with the part of the above-quoted conclusion which says:

"The propriety of a writ of certiorari in matters such as this was decided in *City of Laramie v. Mengel,* * * * and in *State v. Heiner* * * *,"

because, in the case at bar, the petitioner is the State of Wyoming and not the City (as was the case in *City of Laramie v. Mengel,* Wyo., 671 P.2d 340 (1983)), and, therefore, the bill of exceptions is the State's *only* avenue of appeal, and (b) with the implication that this court is possessed of

"* * * discretion to grant certiorari * * * in unusual circumstances [such as those presented by the facts of this appeal by the State of Wyoming],"

because the court cannot exercise "discretion" where it has no jurisdiction.

*City of Laramie v. Mengel,* supra, did not hold, as the majority assert, that this

---

**3.** Article 5, §§ 2, 3 and 18 of the Wyoming Constitution provide:

"§ 2. Supreme court generally; appellate jurisdiction.

"The supreme court shall have general appellate jurisdiction, co-extensive with the state, in both civil and criminal causes, and shall have a general superintending control over all inferior courts, under such rules and regulations as may be prescribed by law."

"§ 3. Same; original jurisdiction.

"The supreme court shall have original jurisdiction in quo warranto and mandamus as to all state officers, and in habeas corpus. *The supreme court shall also have power to issue writs of mandamus, review, prohibition, habe-* *as corpus, certiorari, and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction.* Each of the judges shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of a person held in actual custody, and may make such writs returnable before himself or before the supreme court, or before any district judge of the state."

"§ 18. Appeals from district courts to supreme court.

"Writs of error and appeals may be allowed from the decisions of the district courts to the supreme court under such regulations as may be prescribed by law." (Emphasis added.)

court would or could entertain writs of certiorari where the petitioner is the State of Wyoming as it is here. In the *City of Laramie* case, the City petitioned for a bill of exceptions—not the State—and we entertained the petition as though it were for certiorari. Where, however, the State seeks relief through certiorari, this court has no appellate jurisdiction since the State's only method of reviewing a trial court's ruling which is adverse to the State in a criminal prosecution is by way of the bill-of-exceptions procedure, supra n. 2.

We held in *State v. Ginther,* 53 Wyo. 17, 77 P.2d 803, 807 (1938):

"*Our view of the law accordingly is that the prosecution in a criminal case in this state is given by statute no method of review of adverse rulings except through the medium indicated in the four above cited sections [the bill of exceptions proceeding], with the limitations there imposed.*" (Emphasis added.)

In reliance upon *Ginther,* supra, we held to the same effect in *State v. Heberling,* Wyo., 553 P.2d 1043 (1976) and also in *State v. Benales,* Wyo., 365 P.2d 811 (1961).

In *State ex rel. Gibson v. Cornwell,* supra, 85 P. at 979, Chief Justice Potter said:

" * * * But it is obvious, we think, that the bill * * * *is the basis of the jurisdiction of this court. It is not perceived that we would have authority to decide any question arising upon exceptions of the prosecuting attorney in a criminal case, without a bill of exceptions containing the same, taken and filed as prescribed by the statute.*" (Emphasis added.)

Therefore, under previously unassailed and well-reasoned authority of this court, where the State of Wyoming seeks certiorari in a criminal appeal,[4] it must be denied for lack of jurisdiction. Even though there was no statutory implementing authorization for granting certiorari in *City of Laramie v. Mengel,* supra,[5] we granted the writ under the precedent contained in *City of Sheridan v. Cadle,* 24 Wyo. 293, 157 P. 892 (1916).[6] In the *City of Sheridan* case, the petitioner was the City and therefore was at least not precluded from seeking appellate relief by reason of the exclusory aspects of the bill-of-exceptions proceeding.

Calling up *City of Sheridan v. Cadle,* supra, as our authority, we said, in *City of Laramie v. Mengel,* supra, that the bill-of-exceptions provisions of the statute

" * * * were not applicable in an instance in which the accused is not charged with an offense against the laws of the State of Wyoming and this statutory proceeding [bill of exceptions] was not available with respect to a prosecu-

4. Certiorari is a writ "necessary and proper to the complete exercise of its appellate * * * jurisdiction." Article 5, § 3, Wyoming Constitution.

5. The necessity for which was, I suggest, overlooked by all justices of this court. I also call attention to *Call v. Town of Afton,* 73 Wyo. 271, 278 P.2d 270 (1954), which was not a criminal prosecution, but in which opinion another questionable statement is to be found where the court said:

" * * * We held in effect in *City of Sheridan v. Cadle,* 24 Wyo. 293, 157 P. 892, that a writ of certiorari might issue in some cases in which an inferior tribunal has no jurisdiction or acts in excess of jurisdiction. See also *State ex rel. Loomis v. Dahlem,* 37 Wyo. 498, 263 P. 708. And such writ would seem ordinarily not to be improper in cases in which no appeal has been provided from proceedings before a judicial as quasi judicial tribunal, at least in cases

in which such tribunal had no jurisdiction or acted in excess of jurisdiction. 10 Am.Jur. 527, § 5, see annotation in 174 A.L.R. 194. Whether or not we should go beyond cases of that kind in face of the statute above mentioned is another question." 278 P.2d at 273. This statement is subject to the same criticism that causes *City of Laramie v. Mengel* to be questionable—i.e., while the opinion properly identifies the common-law utilization of certiorari, it ignores the necessity of certiorari-implementing statutory authority as contemplated by Art. 5, §§ 2 and 18 and mandated by *Mau v. Stoner,* supra.

6. Which is a questionable decision also, since certiorari was considered there without the implementing statutory authority required by Art. 5, §§ 2 and 18, which statutory implementation requirement is articulated in *Mau v. Stoner,* supra, discussed infra.

tion in a municipal court for violation of an ordinance." Citing *City of Sheridan v. Cadle*, supra. 671 P.2d at 343.

In *City of Laramie v. Mengel*, we then went on to assume that we had certiorari jurisdiction as we relied upon the following language from the opinion in *City of Sheridan v. Cadle*:

"This not being a civil case, there seems to be no provision giving the city a right of appeal to this court. We think, therefore, that the writ might be issued to determine the question of the jurisdiction of the district court to entertain the appeal in which the order complained of was made." 157 P. at 895–896.

I do not for a moment suggest that this court may never exercise its certiorari appellate authority under the present condition of the Constitution, statutes and case authority of this state. We approved the following concept in *Call v. Town of Afton*, 73 Wyo. 271, 278 P.2d 270 (1954):

" * * * In 14 C.J.S., Certiorari § 40, p. 189, it is said: 'It seems to be the general rule that in a proper case a party entitled to appeal or to pursue some other remedy, who has lost the right through inadvertence, accident, or mistake, may have a remedy by certiorari, provided there is a showing of probable merits and freedom from fault.' See also 10 Am.Jur. 531, 532, § 7." 278 P.2d at 275.

Consistent with this proposition, I would hold that, in the circumstances described and where jurisdiction is conceded in that the right of appeal is statutorily authorized, this court could and should—in the furtherance of justice—call upon its discretionary authority to consider the utilization of certiorari.

I would refer to *Bosler v. Morad*, Wyo., 555 P.2d 567 (1976) as presenting an example of the situation in which the writ might well have been utilized instead of reversing the district court's order denying a motion for an extention of time under Rule 73(a),

W.R.C.P. This rule provides that the court may extend the time for filing a notice of appeal upon a showing of neglect. In *Bosler*, the notice was timely mailed but not received until after the expiration of the time permitted for appeal and therefore the appellant was possessed of a right of appeal which he had lost through no fault of his own. In these circumstances, a writ should issue rather than testing the trial court's discretionary denial of the motion to extend the time for the filing of the notice of appeal on the grounds of excusable neglect.

I would, therefore, emphasize that, in the case at bar, it is with the majority's assumption that this court is possessed of *jurisdiction* to issue writs of certiorari in spite of the *exclusive* remedy provided by the bill-of-exceptions statutes, supra n. 2, and the fact that no other certiorari-implementing statutes are in place, that I take issue with the majority opinion, and I do not address the question which asks whether or not—assuming jurisdiction—the writ was otherwise lawfully employed.[7] It is, therefore, in the jurisdictional context of our difference that I charge the majority with taking unwarranted liberty with our holding in *City of Laramie v. Mengel* when the majority opinion in the case at bar says:

"The propriety of a writ of certiorari in matters such as this was decided in *City of Laramie v. Mengel* * * * and in *State v. Heiner* * * *."

This court is having a problem with writs of certiorari in criminal prosecutions right now and the reason is that the majority of the members—for whatever reason—have decided that the statutory bill of exceptions furnishes an inadequate State appellate remedy in any given prosecution in which an adverse decision to the State's position is announced. It is, of course, conceded by all concerned that the defendant in whose prosecution the question is raised will be affected by this court's holding in response

---

7. I here preserve the position I took in my concurring opinion in City of Laramie v. Mengel, supra, to the effect that, where the parameters of the writ are not specified by the Constitu-

tion, the common-law writ applies. See also my dissenting opinion in *Wright v. State*, Wyo., 670 P.2d 1090, 1099 (1983).

to a writ of certiorari, while this is not so where we respond to issues presented to us within the framework of the bill of exceptions. This has led the court to wander off into the horse latitudes [8] in its effort to impress its appellate decisions upon the particular defendant in whose prosecution the State has received its adverse ruling. The majority have pursued this course even though the court lacks jurisdiction since the bill-of-exceptions procedure is an *exclusive* remedy in these circumstances, *State ex rel. Gibson v. Cornwell,* supra, and for the further reason that other necessary statutes implementing the court's constitutional certiorari authority are not in place as required by Art. 5, §§ 2 and 18 and articulated by *Mau v. Stoner,* supra, discussed infra.

The bedrock concept which this court has ignored in the course of contemplating the proper utilization of its constitutional certiorari authority is the tenet which says that—given the provisions of the Wyoming Constitution, statutes and case law—a right of appeal to this court, even though constitutionally authorized, may not be given effect unless the constitutional authority is implemented by statute and, when so implemented, the right is exclusive and must be followed with particularity.

This court noted long ago that the common-law rule is that the State has *no right to appeal* adverse criminal rulings unless the right is expressly given. 24 C.J.S. Criminal Law § 1659 holds the common-law rule to be:

"Under the common law as generally understood and administered in the United States, the state or federal government *has no right to a writ of error, to an appeal, or to exceptions in a criminal case unless it is expressly conferred by * * * statute * * *"* (emphasis added),

citing Wyoming's *State v. Benales,* supra, and *State v. Ginther,* supra, for the proposition that Wyoming is one of the states that holds to this rule of the common law.

In *State v. Ginther* we said:

"It seems generally held under the common law as administered in this country that the State may not bring a writ of error or take an appeal or have exceptions in a criminal case unless the right thereto has been expressly granted by statute * * *." 77 P.2d at 803.

The rule is reported in Annot., 91 A.L. R.2d 1095, 1096, "Right of prosecution to writ of certiorari in criminal case," where it is said:

"As a general rule the prosecution cannot appeal or bring error proceedings from a judgment in favor of the defendant in a criminal case *in the absence of a statute clearly conferring that right."* (Emphasis added.)

To the same effect see 4 Am.Jur.2d, Appeal and Error § 268, pp. 762–763.

I find the applicable constitutional provisions, supra n. 3, in this state to say that the Wyoming Supreme Court possesses the "power" to issue writs of certiorari "in the exercise of its appellate * * * jurisdiction," however, and except in those circumstances where the civil appellate process is legislatively in place, the "power" lives in a vacuum since there is no constitutional requirement for the issuance of such writs and no other statutory implementing "rules" and/or "regulations" [9] have been adopted.

The Wyoming Supreme Court has historically—and with good reason—refused to even consider the merits of the State's appeals in a criminal case, where the proffered appeal does not comply with the bill-of-exceptions procedure, on the oft-repeated ground that there is no common-law right of appeal (*State v. Benales,* supra; *State v. Ginther,* supra; *Mau v. Stoner,* supra), and, the bill-of-exceptions statutes, §§ 7–12–102 through 7–12–105, supra n. 2, being an exception to the common law,

---

**8.** Defined by Webster's Third New International Dictionary as:

"[E]ither of two belts or regions in the neighborhood of 30° N. and 30° S. latitude characterized by high pressure, calms, and light baffling winds."

**9.** See Art. 5, §§ 2 and 18, supra n. 3.

provide the only source of this court's jurisdiction to review the State of Wyoming's adverse criminal trial-court rulings, *State v. Heberling,* supra; *State v. Benales,* supra; *State v. Ginther,* supra; *State ex rel. Gibson v. Cornwell,* supra.

As early as 1905, when Wyoming Constitution Art. 5, §§ 2, 3 and 18 and the bill-of-exceptions statutes were in place, this court said in *Mau v. Stoner,* supra, 83 P. at 219, that unless the Constitution requires ("requirement") an appeal "as a matter of right," [10] it is the legislature that has the appellate implementing authority as contemplated by Art. 5, §§ 2 and 18 of the Wyoming Constitution. We said:

"* * * It is well settled that, *in the absence of a direct constitutional requirement, the right of appeal does not exist unless expressly conferred by statute.* The right to have a judgment of an inferior tribunal reviewed by writ of error or appeal is not a natural or inherent right. It pertains merely to the mode of judicial procedure or the remedy. Unless it is guaranteed as a matter of right in the Constitution, the Legislature has power to pass laws not only regulating the mode of proceeding, but limiting the cases in which the right may be exercised. The remedy by appeal was unknown to the English common law, hence it may be said that in both England and the United States the whole matter of appellate review is regulated almost entirely by statute law." (Emphasis added.)

This court again embraced this concept in 1975 where, in *Geraud v. Schrader,* Wyo., 531 P.2d 872, 875, cert. denied, *Wind River Indian Educ. Association, Inc. v. Ward,* 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975), Justice Raper, writing for the court, quoted the above rule from *Mau v. Stoner* and observed:

"* * * The right of an appeal is a privilege rather than a right."

Writing for a unanimous court, he went on to observe:

"The legislature has authority to abridge or extend the right of appeal at its discretion and can determine in what cases and under what circumstances appeals may be taken, as well as regulate the manner of appeal. 4 Am.Jur.2d, (Appeal and Error), § 6, pp. 536–537."

It was the court's task in *Mau v. Stoner* to decide whether a right of appeal to the Wyoming Supreme Court was denied by a statute which provided that a trial court's decision would be "final" where it was contended that the Constitution of the state guaranteed appellant access to this court. We said:

"Since the Legislature has declared that the judgment of the district court shall be final * * *, it becomes important to determine whether, under the Constitution of this state, the right of appeal is guaranteed in all cases." 83 P. at 218.

The author of the *Mau* opinion wrote that Art. 5, § 2 of our Constitution, supra, defines the appellate jurisdiction of this court

"* * * without attempting to define the manner of appeal or the class of cases in which appeals may be taken," 83 P. at 219,

and the court then held that the supreme court's jurisdiction is limited by the following Art. 5, § 2 language:

"* * * under such rules and regulations as may be prescribed by law."

The court said:

"* * * We think the expression 'under such rules and regulations as may be prescribed by law' refers to and limits all the powers conferred by the section, in other words, prescribes how the exercise of these powers may be regulated and limited." 83 P. at 219.

It was one of the court's conclusions in *Mau* that it was the intention of the framers of our Constitution that the subject of

**10.** *City of Laramie v. Mengel,* supra, holds that the grant or denial of certiorari is discretionary with this court.

appeals to this court would be left to the legislature, the court saying:

"* * * It is quite clear from the provisions of Sections 18 and 20 that the framers of the fundamental law intended to leave the power over the subject of appeals to the Legislature, to be exercised in such manner as public policy and the best interests of the people might require.'" Quoting from *McClain v. Williams*, 10 S.D. 332, 73 N.W. 72, 43 L.R.A. 287 (1897). 83 P. at 220.

In emphasizing that the right of appeal, even though constitutionally authorized as an appellate tool, must nevertheless be "prescribed by law" (i.e., by the legislature), the *Mau* court referred to an earlier decision in *In re Boulter*, 5 Wyo. 263, 39 P. 875 (1895), where the court said:

"* * * [W]e have no direct constitutional provision allowing appeals as a matter of right in criminal cases, except that this court is clothed with appellate jurisdiction in criminal as well as in civil causes, and is vested with a general superintendence and control over all inferior courts, under such rules and regulations as are prescribed by law (Const.Wyo., art. 5, § 2) * * *." 39 P. at 878.

It was the court's conclusion in *Mau* that, since there had been no rules or regulations promulgated by the legislature under Art. 5, §§ 2 and 18, the respondent had no right of appeal.

### *Bill of Exceptions Is An Exception to the Common-Law Rule*

In *State v. Ginther*, supra, the defendant was charged with the theft of a cow, with receiving the animal knowing it to have been stolen, but no value of the property was alleged. Trial was had and the defendant found guilty, whereupon a motion in arrest of judgment was made and sustained. The State appealed and we held that this court had no ·jurisdiction since

there was no statutory provision for the appeal. In dismissing the appeal, we said:

"It seems generally held under the common law as administered in this country that the State may not bring a writ of error or take an appeal *or have exceptions in a criminal case, unless the right thereto has been expressly granted by statute* * * *" (emphasis added), 77 P.2d at 803.

and while noting that the courts of some states permit such review in limited circumstances—either by case rule or statute—we held that we would adhere to the common law in Wyoming.

We noted in *Ginther* that Wyoming has a statutory exception to this common-law rule which appears as our bill-of-exceptions statutes according to which the State's attorney may take "any opinion or decision of the court" to this court for review. We then went on to hold, and cite with approval cases which hold that, where an appellate right is granted and is based upon specific statutes, such statutes are to be strictly construed and are not to be enlarged by construction. It is said in 24 C.J.S. Criminal Law, § 1659, wherein the states' right of appeal in criminal cases is discussed, that the common-law rule is as this court identified it in *Ginther*, supra. The encyclopedia then goes on to say that

"* * * it is generally held that, being in derogation of the common law, they [statutes granting appellate rights] should be strictly construed, and that the authority conferred thereby should not be enlarged by construction. [Citations.]" [11]

In *State v. Weathers*, 13 Okl.Cr. 92, 162 P. 239 (1917), cited in *Ginther* for the proposition that criminal-appeals statutes which are in derogation of the common law must be strictly construed, the Oklahoma Supreme Court said:

---

11. We recently expressed the derogation-of-common-law rule for Wyoming when we said in *State v. Stovall*, Wyo., 648 P.2d 543, 547–548 (1982):

"* * * A statute designed to change the common law must be strictly construed. *Maha-*

*ney v. Hunter Enterprises, Inc.*, Wyo., 426 P.2d 442 (1967). It must speak in clear and unequivocal terms, for the presumption is that no change is intended unless the statute is explicit."

"* * * In many jurisdictions the state has no right of appeal at all, and its right to appeal, where the right is granted, is based upon specific statutes, which statutes are not to be enlarged by construction." 162 P. at 240.

See also *State v. Arnold,* 144 Ind. 651, 42 N.E. 1095 (1895), cited in *Ginther,* where, in referring to a statute similar to that considered in *State v. Weathers,* supra, it was said:

"These statutes, it is urged, deny the right of the State to appeal in other instances than those enumerated; and this, we have no doubt, is correct, as shown by the cases cited to that proposition. *State v. Bartlett,* 9 Ind. 570; *State v. Hamilton,* 62 Ind. 409; *State v. Hallowell,* 91 Ind. 377; *State v. Evansville & T.H. Ry. Co.,* 107 Ind. 581, 8 N.E. 619."

This court then held in *Ginther:*

"*Our view of the law accordingly is that the prosecution in a criminal case in this state is given by statute no method of review of adverse rulings except through the medium indicated in the four above cited sections [the bill of exceptions proceeding], with the limitations there imposed.*" (Emphasis added.) 77 P.2d at 807.

To the same effect see *State v. Heberling,* supra, and *State v. Benales,* supra.

### Bill of Exceptions

### The Exclusive Source of This Court's Jurisdiction

Since it is not possessed of a common-law right of appeal, the State has no right to appeal a district court's adverse ruling or judgment in a criminal prosecution without strictly adhering to the bill-of-exceptions provisions of the statute, § 7–12–102 through § 7–12–105, supra n. 2. This being so, this court, except by bills of exceptions, has no jurisdiction to review any such rulings or judgments. *State ex rel. Gibson v. Cornwell,* supra, 85 P. 977. As has been previously noted, in Gibson, Chief Justice Potter, writing for the court, said:

"* * * *It is only upon a compliance with the provisions of the statute in question [bill of exceptions] that this court obtains jurisdiction to review any ruling of the district court adverse to the state in criminal prosecutions.*" (Emphasis added.) 85 P. at 979.

In *State ex rel. Gibson,* the Attorney General argued that an exception to the ruling of the court should be sufficient to preserve the issue for this court's consideration. This court rejected the contention, saying:

"* * * But it is obvious, we think, that the bill in a case like this * * * *is the basis of the jurisdiction of this court. It is not perceived that we would have authority to decide any question arising upon exceptions of the prosecuting attorney in a criminal case, without a bill of exceptions containing the same, taken and filed as prescribed by the statute.*" (Emphasis added.) 85 P. at 979.

Having said this, the court struck the bill since it was not sealed as provided by what is now our § 7–12–102, W.S.1977, 1983 Cum.Supp.

### CONCLUSION

In summary, I call attention to these following propositions:

The Constitution of the State of Wyoming authorizes this court to issue writs of certiorari in the exercise of its appellate power, Art. 5, § 3, supra, but this authority is restricted by such rules and regulations as "may be prescribed by law." Art. 5, §§ 2 and 18. It is the legislature that has been given the authority to limit and define the appellate process, *Mau v. Stoner,* supra. The writ of certiorari being in aid of this court's appellate jurisdiction, Art. 5, § 3, supra, in a criminal prosecution, statutory authority must exist to invoke the court's certiorari authority, Annot., 109 A.L.R. 793, 794–795, since, in criminal matters, the State has no common-law right of appeal from adverse trial-court decisions. *State v. Benales,* supra; *State v. Ginther,* supra; Annot., 91 A.L.R.2d 1095, 1096; 4

Am.Jur.2d, Appeal and Error § 268, pp. 762–763; 24 C.J.S. Criminal Law § 1659.

In Wyoming, the legislature has carved out an exception to the common-law rule of nonappealability of the State's adverse criminal rulings through the passage of the bill-of-exceptions statutes. Since these statutes are in derogation of the common law, they must be strictly construed and their authority cannot be enlarged by construction. *State v. Ginther*, supra; *State v. Weathers*, supra; *State v. Arnold*, supra; 24 C.J.S. Criminal Law § 1659; and see *State v. Stovall*, Wyo., 648 P.2d 543, 547–548 (1982) for reaffirmation of the rule pertaining to the necessity for strict construction of statutes in derogation of the common law.

This court has held that, based upon these above propositions, the prosecution in Wyoming has "no method of review of adverse rulings except through [the bill-of-exceptions procedure]," *State v. Ginther*, supra, and, finally, we have said that it is only upon compliance with the bill-of-exceptions provisions that this court has "jurisdiction to review any ruling of the District Court adverse to the state in criminal prosecutions." *State ex rel. Gibson v. Cornwell*, supra.

For the reasons given, I would hold that the majority commit grievous error in granting the writ of certiorari in this appeal because—this being a criminal prosecution—this court has, through certiorari, no jurisdiction to review a ruling or a judgment of the district court adverse to the State of Wyoming.

The writ was improvidently granted.

CARDINE, Justice, dissenting, with whom ROSE, Justice, joins.

I dissent.

Respondent, while operating a motor vehicle, was involved in an accident resulting in the death of two persons. There was no charge of drinking or intoxication, although there was evidence of the violation of traffic laws which might rise to the level of culpable neglect or criminal carelessness or conscious disregard of the safety of others.

Respondent was charged with involuntary manslaughter under § 6–4–107, W.S. 1977, which provided:

"Whoever unlawfully kills any human being * * * involuntarily, but in the commission of some unlawful act, except as provided in W.S. 31–5–1117, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty (20) years."

Respondent contended that he could only be charged with homicide by vehicle pursuant to § 31–5–1117(b), W.S.1977, which provided:

"(b) Whoever, except when the violation of law involves culpable neglect or criminal carelessness, unlawfully and unintentionally, but with a conscious disregard of the safety of others, causes the death of another person while engaged in the violation of any state law or ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except those laws or ordinances relating to conduct set forth in subsection (a) of this section, is guilty of homicide by vehicle when the violation is the proximate cause of death and, upon conviction thereof, shall be fined not more than two thousand dollars ($2,000.00) or imprisoned in the county jail for not more than one (1) year, or both."

The trial court granted respondent's motion to dismiss, holding that he could only be charged with homicide by vehicle under § 31–5–1117(b), W.S.1977, supra, citing in support of its decision our previous holdings in *Thomas v. State*, Wyo., 562 P.2d 1287 (1977) and *Lopez v. State*, Wyo., 586 P.2d 157 (1978). The majority opinion acknowledges the correctness of the district court's ruling when it states:

"The logic of the district court judge is in accordance with our former holdings. There is no discernible difference between the standard of 'reckless disregard' (which was held to be the equivalent of 'culpable neglect or criminal care-

lessness') and 'conscious disregard' which is used in the context of 'unlawfully and unintentionally' doing that which is proscribed by the vehicular homicide statute. Therefore, if this were the only aspect of this issue, we would uphold the district court's ruling."

For me the case should end here. The decision of the district court should be affirmed. No other issues were raised for our determination.

The majority, however, proceeds from here to consider the constitutionality of § 31–5–1117(b). This is an issue not raised, nor briefed, nor argued, nor contended for by any of the parties to this appeal. We have long held that we will not ordinarily inquire into the constitutionality of a statute on our own motion, nor will we declare a statute unconstitutional unless it is absolutely necessary. *State, ex rel. Keefe v. McInerney,* 63 Wyo. 280, 182 P.2d 28 (1947). Nor will we inquire upon our own motion where the case can be completely and effectively disposed of without such a decision. *Markey v. Connelly,* Wyo., 367 P.2d 964 (1962). This case has been decided in accordance with the law we have stated in our prior decisions. It has been disposed of completely and effectively. There is no justification under our existing rules for undertaking a determination of the constitutionality of this statute.

The majority, however, has chosen in this case, upon their own motion, to determine the constitutionality of the statute. I find myself in disagreement also with the determination that § 31–5–1117(b), supra, is unconstitutional. It is clear from the legislative history of these enactments that the legislature long ago determined that it would treat homicide by vehicle separately and differently from manslaughter. It enacted at different times several successive separate statutes providing different penalties for "negligent homicide" and "homicide by vehicle" where death resulted from the operation of a motor vehicle. These special statutes were entirely proper and within the enacting authority of the legislature. This court has a duty, in construing the statutes, to attempt to effectuate the intent and purpose of the legislature. *Nimmo v. State,* Wyo., 603 P.2d 386 (1979). Thus, I would construe the exception found in § 31–5–1117(b), supra, "when the violation of law involves culpable neglect or criminal carelessness" to be applicable only to violations of law not involving the use or operation of a motor vehicle. I would hold the statute constitutional, giving effect to the clear intent of the legislature that where death results from the use or operation of a motor vehicle with conscious disregard for the safety of others, the penalty upon conviction is one year in jail and a $2,000 fine as provided by the statute. This result satisfies the following general rules of construction:

"In the construction of statutes, the courts start with the assumption that the legislature intended to enact an effective law * * *. Hence, it is a general principle that the courts should, if reasonably possible to do so interpret the statute, or the provision being construed, so as to give it efficient operation and effect as a whole. An interpretation should, if possible, be avoided, under which the statute or provision being construed is defeated, or as otherwise expressed, nullified, destroyed, emasculated, repealed, explained away, or rendered insignificant, meaningless, inoperative, or nugatory. * * *" (Footnotes omitted.) 73 Am.Jur.2d Statutes § 249.

The result I suggest means respondent cannot be tried for manslaughter but only for vehicular homicide with the resultant effect that respondent, upon conviction, can be imprisoned for not more than one year and fined not more than $2,000. Perhaps the penalty for conviction of vehicular homicide is not as severe as some think it should be. That is for the legislature; not for this court to determine, for it is said that:

"The power to prescribe the penalty to be imposed for commission of a crime rests with the legislature, not with the courts. This power is not a special grant or limited authority; it is part of the sovereign power of the state to maintain

social order and to take life and liberty and the rights of both when necessary. As the Supreme Court has stated, whatever views may be entertained regarding the severity of punishment, whether one believes in its efficacy or its futility, these are peculiarly questions of legislative policy." (Footnotes omitted.) 21 Am.Jur.2d Criminal Law § 589.

There was an obvious intent by the legislature to treat death resulting from the operation of a motor vehicle in violation of traffic laws separately and differently from death resulting from other causes such as the use of a gun or knife. The different treatment accorded by the legislature should be given considerable weight in determining the status of these statutes. Drivers are licensed at sixteen years of age and can receive a special permit to drive before that age. Almost everyone drives or wants to drive an automobile. It is often considered a necessity for traveling to work and in everyday living.

" * * * [N]egligent homicide statutes were adopted after the manslaughter acts had proved ineffective as a means of repressing the negligence in motor vehicle operation which was causing deaths upon the public thoroughfares. Possibly the success of the new legislation, if it in truth achieved any, resulted from the fact that in common understanding manslaughter acts deal with brutal killings by a debased type of individual, whereas the motorist is generally a reputable citizen, and the wrong committed by him which brought someone to his death finds its counterpart in the driving of many others. * * *" *State v. Wojahn*, 204 Or. 84, 282 P.2d 675, 701 (1955).

The different treatment accorded by the legislature is reasonable. These penal statutes, therefore, should be

" * * * construed with such strictness as to safeguard the rights of the defendant. If the statute contains a patent ambiguity and admits of two reasonable and contradictory constructions, that which operates in favor of a party accused under its provisions is to be preferred. * * *"

(Footnote omitted.) 73 Am.Jur.2d Statutes § 295.

It would be a gross injustice that this defendant, upon § 31–5–1117(b) being found unconstitutional, be tried for manslaughter when the legislature obviously intended that not occur where death results from a violation of a statute or ordinance while operating a motor vehicle.